Alexander, J.
(dissenting). Because I believe, contrary to the position advanced by the majority, that a fair reading of the record unquestionably establishes that defendant raised an entrapment defense in every conceivable way short of reading the statutory definition to the jury, I conclude that the lower court was fully justified in instructing the jury on *779 the law of entrapment over defense counsel’s objection and thus committed no error. Further, because there is inherent in the majority view the troubling potential for abuse that would permit clever defense counsel to obliquely raise the entrapment issue at trial while avoiding the court’s instruction that would enable the jury to properly evaluate the defense, thereby evading the affirmative evidentiary requirements that criminal defendants urging entrapment must satisfy, I respectfully dissent.
Entrapment is "an affirmative defense that the defendant engaged in the proscribed conduct because he was induced or encouraged to do so by a public servant, or by a person acting in cooperation with a public servant, seeking to obtain evidence against him for purpose of criminal prosecution, and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it” (Penal Law § 40.05). Being an affirmative defense, the People need not disprove entrapment beyond a reasonable doubt and it is defendant who bears the burden of proving the defense by a preponderance of the evidence (Penal Law § 25.00 [2]). Thus, a defendant urging entrapment assumes the burden of showing that the police actively encouraged or induced him to commit a crime when he was not predisposed to do so (see, People v Martin, 66 AD2d 995).
Upon close examination of the record, it is at once apparent that defendant’s attorney repeatedly attempted to portray his client as having been victimized by the deceptions and machinations of the undercover officer. In his opening, the attorney described the officer as "a professional deceiver” who "befriended” and "took advantage” of defendant. He recounted numerous phone calls placed by the undercover officer to defendant’s residence in an attempt "to ensnare an innocent man, Mr. Scott Degina, into selling something that an innocent man didn’t want to sell”. In a similar vein, the attorney suggested that the officer was "interfering with [defendant’s] tranquility and his lifestyle” and that he was "trying to force [defendant] to do something he doesn’t want to do”. The allusion to the entrapment defense here could hardly be more obvious; defense counsel was clearly asking the jury to believe that defendant was actively encouraged to commit a crime he was not predisposed to commit.
The fact that an entrapment defense was being pursued is *780 further demonstrated by the tenor of the cross-examination where, in questioning the undercover officer, counsel repeatedly attempted to elicit statements suggesting that defendant had consistently resisted the seductions of the police:
"Defense Counsel: Isn’t it true, Sir, that every time that you called Mr. Degina, if he answered the phone, or every time you tried to make contact with Mr. DeGina, he didn’t want to speak to you, and he didn’t want to have anything to do with you?
"District Attorney: Objection form of the question. Compound.
"The Court: The objection is sustained.
"Defense Counsel: Isn’t it true that Mr. DeGina wasn’t interested in speaking to you?
"Witness: No, that’s not true.
"Defense Counsel: Isn’t it correct, Sir, that you were promoting the transaction?
"Witness: No.
* * *
"Defense Counsel: Isn’t it true that Mr. Degina told you to stop calling his house? Scott DeGina; isn’t that true?
"Witness: I don’t recall.
* * *
"Defense Counsel: And you said — and isn’t it a fact, Sir, that you told Mr. DeGina, when you handed him the money, you told him, T know where you can get it.’ Isn’t that true? T know where you can get the cocaine.’ When you gave him the $125.00?
"Witness: No.
"Defense Counsel: Isn’t it true that he showed absolute [reluctance]?
"District Attorney: Objection to form. Argumentative.
"The Court: Yes, the objection is sustained.
"Defense Counsel: Isn’t it true that he was reluctant?
"District Attorney: Objection. Form.
"The Court: Objection is sustained.
"Defense Counsel: Isn’t it true that he did not want to?
"District Attorney: Same objection, Judge.
*781 "The Court: You are asking for an opinion. The objection is sustained.
* * *
"Defense Counsel: Isn’t it true that Mr. Degina said he did not want to sell you [cocaine] for $125.00.
"Witness: No, it’s not true.
* * *
"Defense Counsel: You are familiar with buying drugs, you’ve done it a lot; right?
"Witness: Right.
"Defense Counsel: Would you say it’s common practice for an enthusiastic would-be seller of drugs to sell a good customer talcum powder?
"District Attorney: Objection to the form of the question.
"The Court: Objection sustained.”
That the foregoing exchange is relevant to the issue of predisposition to commit the crimes charged and is designed to counteract such an inference is self-evident. It is clear that defense counsel knew exactly what he was doing in presenting for the jury’s consideration the picture of an innocent man who was lured by the police into a drug transaction he neither sought nor desired.
The majority appropriately notes (majority opn, at 773) that during his summation defense counsel repeated his contention that the undercover officer had been trying to "ensnare” defendant. The majority fails to mention, however, that defense counsel also explicitly referred to a very well-known entrapment case in suggesting that defendant’s predicament was "more serious than the DeLorean case” (alluding to the case of United States v DeLorean in which a famous car manufacturer was acquitted of drug-related charges by reason of entrapment). This telling reference is directly at odds with the position advanced by defendant in his brief to us that "[e]ven after the court informed counsel that it intended to charge the affirmative defense of entrapment, counsel in his closing summation did not conform his arguments to encompass this defense”. It is simply impossible to interpret defense counsel’s allusion to the DeLorean case in any way other than as a deliberate effort, consistent with counsel’s trial strategy up to that point, to impress the entrapment defense upon the *782 collective conscience of the jury, even while urging that defendant played no part in the crimes charged.
Given the ample record evidence demonstrating defense counsel’s deliberate strategy to raise the entrapment defense at trial, I cannot agree with the majority’s conclusion that charging the jury on the law of entrapment was error. Indeed, it may not be disputed that the trial court was obligated to instruct the jury on the material legal principles applicable to the case (CPL 300.10 [2]). Not delivering the entrapment charge, in the circumstances presented, would have breached this obligation and left the jury without the legal tools necessary to cope with the evidence adduced at trial (see, People v Magliato, 68 NY2d 24 [where defendant raises justification defense, court is obligated to instruct jury on elements of that defense]).
Nor does requiring the entrapment charge on these facts present defendant with a "Hobson’s choice” (see, majority opn, at 776, n 2) requiring him to pursue a particular defense strategy not based on entrapment only at the peril of being saddled with an unwanted entrapment charge at the end of the trial. Here, it was defendant who, by intentionally raising the affirmative defense,- all but guaranteed that the court would deliver the charge. Defense counsel’s repeated references to "ensnaring” and his obvious attempts to persuade the jury that defendant was not predisposed to committing the crimes charged would have been unnecessary if the strategy of the defense were limited solely to proving that the undercover officer framed defendant out of anger after defendant sold him talcum powder instead of cocaine.
Holding defendant to his chosen defense strategy does not, as suggested by the majority, "[assume] the falsity of defendant’s version of events” (see, majority opn, at 776, n 2), but simply ensures that his version of events, or versions if more than one, are properly reflected in the court’s instructions to the jury. In this regard, the fact that defense counsel apparently also pursued a parallel strategy by which he attempted to portray defendant as a nonparticipant in the drug transaction who was framed by the undercover officer neither diminishes nor eliminates the entrapment defense as it is recognized that a criminal defendant may maintain inconsistent defenses (see, Mathews v United States, 485 US —, 108 S Ct 883, 887-888; People v Butts, 72 NY2d 746, 750 [decided today]). Inasmuch as the entrapment defense was clearly and *783 intentionally raised at trial, had the court failed to instruct the jury in respect thereto, defendant would have succeeded in evading the affirmative proof obligations of that defense imposed by law, thereby misleading the jury into believing that the People carried the burden of disproving entrapment beyond a reasonable doubt.
To permit a criminal defendant, through his attorney, to subtly, but clearly, raise an affirmative defense at trial while avoiding the proof requirements of that defense and the charge pertaining thereto is patently improper and tends to undermine the fairness of the adversarial system. A fair trial is not a trial fair to one side alone but rather one which scrupulously respects and protects the legal rights of the criminal defendant while affording the prosecution a genuine unfettered opportunity to prove the defendant’s guilt beyond a reasonable doubt (see, Hayes v Missouri, 120 US 68, 70 [impartiality of jury "requires not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the state the scales are to be evenly held”]). This is simply not possible where, as here, the defense attorney is permitted, through the artful manipulation of language, to offer an entrapment defense for the jury’s consideration while denying that same jury, by objecting to the court’s instruction, essential knowledge of the legal principles applicable to that defense. Accordingly, I would affirm the order of the Appellate Division.
Chief Judge Wachtler and Judges Simons, Titone and Hancock, Jr., concur with Judge Kaye; Judge Alexander dissents and votes to affirm in a separate opinion in which Judge Bellacosa concurs.
Order reversed, etc.