■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD SCHWARTZ, Appellant.—Judgment, Supreme Court, Bronx County (Gerald Sheindlin, J.), rendered February 8, 1989, convicting defendant, after trial by jury, of manslaughter in the second degree and sentencing him to an indeterminate term of imprisonment of from 4 to 12 years, unanimously reversed, on the law, the facts and as a matter of discretion in the interest of justice, the judgment is vacated and the matter is remitted to the Supreme Court for a new trial.

Defendant was indicted for the crimes of murder in the second degree (felony murder and intentional murder), attempted robbery in the first degree, criminal possession of a weapon in the second degree and criminal use of a firearm in the second degree in connection with the killing of a reputed drug dealer in 1981. Angel Santa testified that he was in the deceased's apartment on March 4, 1981 when defendant and

his friend Carlos stopped by to purchase some cocaine. The deceased refused to sell defendant the drugs, however, because defendant still owed him money from previous transactions. Defendant asked Santa if he wanted to buy a handgun to get some money for the drugs but Santa declined.

Defendant and Carlos returned to the apartment later in the day and the deceased agreed to sell defendant some cocaine. After snorting some of the drug, defendant went into the bathroom. When he came out again, Santa heard a succession of shots, saw the deceased fall backward and heard defendant say "tell me where the money is." As Santa and defendant began struggling over the gun, defendant told Carlos to shoot him. The wrestling over the gun continued into the hallway, down to the outer door, where defendant fled. A friend of defendant testified that later that evening at a discotheque, defendant told him that he had shot the deceased. While the police were questioning another friend of defendant at his home a few days later, defendant telephoned, and, while the police were listening on an extension, stated that he had to kill the deceased because he owed him $2,000. He added that if he "didn't get him, he would have got me."

Defendant testified that he had been living in California during the almost eight years since the shooting and that he had stopped using drugs, remarried and started his own executive recruitment firm. After becoming addicted to cocaine in 1980, he began purchasing $50 worth of cocaine a day from the deceased. Even though he already owed the deceased $2,000, he went to the deceased's apartment on March 4, 1981 with his friend Carlos to try to purchase more on credit. The deceased told him that he had already reached his limit on credit but that if defendant would sell a gun for him, he would give him some cocaine.

Defendant and Carlos left the apartment and stopped at a restaurant where defendant called a friend who agreed to loan him $200. He and Carlos then returned to the deceased's apartment and gave him the money. While the deceased went to the kitchen to get the drugs for him, defendant asked Santa if he wanted to buy the gun. Santa told him that he already had one so defendant told the deceased that he could not sell the gun for him. Defendant testified that he snorted some of the cocaine and went into the bathroom where he began wiping his fingerprints off the gun before giving it back to the deceased. As he came out of the bathroom, Santa lunged at him and grabbed for the gun. Defendant stated that he began pulling the trigger to discharge the bullets from the gun so

that Santa wouldn't shoot him and yelled to Carlos for help. He and Santa continued to struggle for the gun and as they approached the front door, defendant fled, throwing the gun into a nearby sandpile.

The court provided the jury with a charge on attempted robbery in the first degree, felony murder and intentional murder, manslaughter in the first degree (extreme emotional disturbance and intent to cause serious physical injury), manslaughter in the second degree and criminally negligent homicide. Despite the prosecutor's contention that there was no reasonable view of the evidence to support a charge on self-defense, the court provided a charge on justification solely as it applied to intentional murder and to both counts of manslaughter in the first degree. Defense counsel did not object to the charge. The jury thereafter returned with a verdict convicting defendant of manslaughter in the second degree.

We agree with defendant that the court erred in failing to instruct the jury with respect to the defense of justification as it related to the charge of manslaughter in the second degree. In viewing the record in the light most favorable to defendant, and based on a reasonable view of the evidence, the jury could have decided that defendant's actions were justified. *(See, People v Padgett,* 60 NY2d 142, 145; *People v Torre,* 42 NY2d 1036, 1037.)* Defendant testified that he was not the initial aggressor and that he emptied the bullets from the gun in order to protect himself from the imminent use of deadly force by Santa, who jumped him as he walked out of the bathroom.

While the Supreme Court correctly charged the defense of justification with respect to the intentional crimes, it erred in apparently concluding that such defense was inapplicable to "a defendant's risk-creating conduct, even though it had unintended consequences *(see, People v McManus,* 67 NY2d 541; *People v Huntley,* 59 NY2d 868)" *(People v Magliato,* 68 NY2d 24, 28-29). It is well settled that a charge of justification is warranted whenever there is evidence to support it in a prosecution for any crime involving the use of force, including reckless and negligent homicide *(People v Magliato, supra,* at 29; *People v McManus, supra; People v Huntley, supra; People v Torre, supra; People v Lawrence,* 157 AD2d 497, *amended* 159 AD2d 298; *People v Rodwell,* 100 AD2d 772). Such error, despite defense counsel's failure to request the charge or to except to the charge provided, requires a reversal and a new trial. *(People v Rodwell, supra; People v Huntley,* 87 AD2d 488, 494.)* As in *Rodwell,* the jury may well have concluded that justification was not disproven but convicted defendant any-

way under the mistaken impression that it was permissible to do so.

In light of the foregoing, we do not reach defendant's remaining contentions. Concur—Ross, J. P., Rosenberger, Asch, Kassal and Wallach, JJ. *[See,* 169 AD2d 556.]