■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN COPELAND, Appellant. [627 NYS2d 653] —Judgment of the Supreme Court, Bronx County (William H. Wallace, III, J.), entered November 12, 1992, convicting defendant, after trial by jury, of assault in the second degree and criminal possession of a weapon in the fourth degree, and sentencing him, as a second felony offender, to a term of from three and one-fourth years to six and one-half years for the assault conviction, and a concurrent term of one year for the weapon possession conviction, is unanimously reversed, on the law and facts, and as a matter of discretion in the interest of justice, and the matter remanded for a new trial.

The People presented testimony that 17-year-old Shawn Glenn was the "disc jockey" at a party in the Mott Haven Projects in the Bronx. Levinia Spencer witnessed a group of Hispanic young men beat up a "short fat" Hispanic youth and leave him lying on the floor bleeding from the head, face and nose. Shawn Glenn, who had been performing in an apartment on that floor, attended to the victim with some ice until he regained consciousness. Glenn was told his younger brother was in a fight downstairs. When he exited the building, he saw his brother across the street arguing with three men: defendant, Reginald Speller, and another man. Glenn pointed at the men and asked Speller why "all these guys" were hassling his brother. Defendant emerged from behind Speller and struck Glenn with a beer bottle over the left side of his head and then stabbed him with the broken bottle. Glenn fled from the scene bleeding profusely and the crowd pounced on defendant and beat him up. Both Glenn and defendant went to Lincoln Hospital for treatment of wounds received and defendant was arrested upon an identification by Glenn.

In both the Grand Jury and at the trial, defendant gave his version of what had taken place. He explained that the only reason he swung a bottle that night was to protect himself as he was attacked by a gang. He testified that he went to the party and saw gang members attack a young Hispanic man in the kitchen and then drag him into the hallway where they continued to beat him. Glenn was a member of the gang and did nothing to help the victim. At defendant's suggestion, he and his friend Speller left the party. As they walked out, one of the gang members "shouldered" or bumped into him. He was threatened and someone threw a bottle at him striking the bridge of his nose. Then defendant stated that he was attacked from all sides by about 15 to 20 persons. They sprayed mace into his face, stabbed and sliced him in the back of his head, on his legs, neck and across his knees. They hit him with bats and bottles. The mob chased the defendant and as he tried to flee someone tripped him. After he fell to the ground, he grabbed a bottle on the ground and swung it once. He did not know if he had hit anyone with the bottle but only recalled that it fell out of his hands when he swung it. Defendant testified that Shawn Glenn was one of the teenagers who had chased and attacked him. On cross-examination, he admitted that because he did not know what happened when he swung the bottle to ward off his attackers, the bottle may have hit Glenn.

On her closing argument, defendant's counsel said in

pertinent part: "Now Mr. Copeland took the stand and he told you that in extremis he did take up a bottle and he tossed it, so he said, if I hit somebody it was in self-defense. That's what he said". The court admonished counsel for her choice of words, calling the use of the phrase "self-defense", *inter alia*, "A technical term. I'm not intending to use in this case either, so I don't think you should". Counsel thereafter altered her argument.

Defendant never requested a justification instruction during the charging conference or after being admonished by the court that counsel should not use the term "self-defense". Even after the jury, on the second day of deliberations, inquired of the court whether it could base a not guilty verdict on "self-defense", the defendant still did not request the charge.

Under the circumstances, however, the error in not instructing the jury on justification was critical and merits reversal "in the interest of justice" despite defense counsel's failure to request the charge or to except to the charge provided (*see, People v Schwartz*, 168 AD2d 251, 253-254; *People v Rodwell*, 100 AD2d 772, 773; *People v Huntley*, 87 AD2d 488, 494, *affd* 59 NY2d 868).

Viewed in the light most favorable to the defendant and based upon a reasonable view of the evidence, the jury could have decided that defendant's actions were justified (*see, People v Padgett*, 60 NY2d 142, 145; *People v Steele*, 26 NY2d 526, 529). He testified that he swung the bottle as he was being attacked by the gang members. Someone had thrown a bottle at his face just before he was chased. Then, when he tripped and fell, mace was sprayed in his eyes and the gang members, who included the complainant, cut him with razor blades and bottles all over his body. It was at that juncture that he grabbed the bottle and swung it. If the jury credited this testimony, they could have decided that defendant reasonably believed that physical force was necessary to defend himself and that he was justified in swinging the bottle to ward off any attackers (Penal Law § 35.15).

The court's error in failing to charge justification, *sua sponte*, was even more egregious when it prevented defense counsel from arguing to the jury that defendant's testimony made out a case of self-defense. Moreover, the error was effectively pointed out by the jurors themselves in their consideration of the conflicting testimony. The jury sent a note acknowledging that the court advised the lawyers not to use the concept of self-defense, but they still specifically wanted to know "if as jurors", they could "base a not guilty verdict on self defense".

The court's response compounded its original error by removing from the jurors the authority to acquit even if they concluded that defendant's actions were justified. Finally, the court implicitly told the jury that defendant had struck the complainant intentionally by commenting to the jury that self-defense was "an inappropriate defense" under the circumstances because "[s]elf-defense does not mean that you get even with somebody or you retaliate".

We have examined defendant's remaining contention and find it to be without merit. Concur—Ellerin, J. P., Asch, Nardelli and Williams, JJ.