THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK MAGLIATO, Appellant.

First Department, October 10, 1985

### APPEARANCES OF COUNSEL

*Leon B. Polsky* for appellant.

*Arthur G. Weinstein* of counsel (*Mark Dwyer* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

BLOOM, J.

The issue before us is whether the evidence adduced at the trial warranted a jury finding that defendant, under circumstances evincing a "depraved indifference to human life" recklessly engaged in conduct which created a grave risk of death to another person and thereby caused his death (Penal Law § 125.25 [2]). We hold that it did not. Accordingly, we reduce the conviction to that of manslaughter in the second degree, vacate the sentence imposed and remand for resentence.

The circumstances leading to the tragedy were relatively simple. On September 6, 1983, the day following Labor Day, Donald Schneider, a New Jersey resident, decided to mark the summer's end with a trip to Washington Square Park. Together with his friend Anthony Giani, the deceased, they drove to the park. After a short stay, they started home. As they proceeded

west on Houston Street, a red Ferrari driven by Frank Magliato, the defendant, came on the scene. Apparently, the station wagon driven by Schneider clipped the rear of the Ferrari. Whatever the reason, Schneider did not stop. Defendant followed the station wagon until it stopped for a traffic light behind a truck. Defendant got out of his car. As he did so, Giani emerged from the station wagon carrying a nightstick. Initially, both men stood by their vehicles, facing each other and hurling epithets. Giani then started toward defendant. Uttering some of the choicest profanities, he threatened to kill defendant and directed him to "get out of here". Magliato returned to his car. In the interim the light had changed and Schneider drove off to find a parking spot, leaving Giani behind. Defendant followed the station wagon. His passenger, Edward Klaris, recorded its vehicle registration number. After Schneider had parked his vehicle at West Broadway and Broome Street, defendant drove past it and continued on toward Spring Street where he spied Giani, who, apparently, was searching for Schneider. Defendant drove his car past Giani, barely missing him.

Defendant then went looking for a police officer. Failing to find one, he drove to his home, parked the car and went to his apartment, leaving Klaris in the vehicle. He returned shortly. Now, however, he was wearing a holstered gun.

Magliato drove back to where the Schneider vehicle was parked and stopped across the street, near a phone booth. While Klaris called 911, defendant left his car and started toward the station wagon, again shouting profanities. Giani emerged from the station wagon, holding the nightstick in a threatening position. According to the prosecution, the two men faced each other across a distance of some 45 feet. Suddenly, defendant cocked his weapon and assumed a firing position, crouching with both feet planted apart and arms outstretched. The gun in his hand, he took deliberate aim and fired at Giani striking him in the forehead and causing such massive brain damage that he died two days later.

The defense version differs somewhat. Defendant did not dispute that he drew his weapon and cocked it. However, he contended that his weapon could fire under the slightest pressure and that immediately prior to the firing of the weapon, a car passed close to Giani, brushing him back. This incident so unnerved defendant that he accidentally exerted pressure on the trigger sufficient to discharge the weapon.

Immediately after shooting Giani, defendant walked back to his Ferrari and, together with Klaris, drove the car to a garage

across the street from his Mercer Street apartment and so positioned it as to secrete it.

A day or two later the police located Klaris through the 911 phone call which he was in the process of making at the time of the shooting. Initially, he refused to cooperate. However, after the police had left he called defendant and informed him that he was ready to tell the police "the whole truth". Defendant then consulted an attorney and six days after the shooting surrendered to the police. His attorney, who accompanied him, turned two guns, both owned by defendant, over to the police. A ballistics test indicated that the bullet which had killed Giani had been fired from one of them, a Colt .38 Detective Special.

I

Defendant was indicted in a two-count indictment charging intentional homicide (Penal Law § 125.25 [1]) and "depraved indifference" murder (Penal Law § 125.25 [2]). At the conclusion of the evidence, the trial court submitted both counts to the jury. It also submitted manslaughter in the first degree with respect to the count charging intentional murder, and manslaughter in the second degree and criminally negligent homicide with respect to the depraved indifference count, as lesser included counts. In each instance, the charge correctly noted that the lesser included counts were not to be considered by the jury unless it first acquitted on the higher count.

Despite the trial court's efforts to clarify the relative seriousness of the respective crimes charged, a note sent to the court by the jury reflected some confusion. It read: "We the jury wish to know if the counts are presented in descending order of seriousness". However, they received no enlightenment from the court in that regard other than the statement that "the order of seriousness of the crimes is something with which you should not be concerned in my opinion, since at no time are you to consider punishment or possible punishment in your deliberations at all. It is improper for you to do that, if you are convinced beyond a reasonable doubt that the People have established the guilt of this defendant to any crime. You may find him guilty of that crime, regardless of its seriousness."

Bottomed on this supplemental instruction, the jury returned a verdict of not guilty of intentional murder and manslaughter in the first degree under the first count. It did not reach the lesser included counts under the second count, manslaughter in the second degree and criminally negligent homicide.

Technically, the supplemental instruction was correct. However, it is apparent from a letter written by one of the jurors to

the trial court after the verdict had been reached that some of the jurors had been confused because they believed that the court's charge had set forth the severity of the crimes in descending order of importance. The inference to be drawn from the letter is that, had the jury realized that depraved indifference murder was murder in the second degree it would have found defendant guilty of a lesser degree of homicide. The trial court redacted the letter by eliminating the juror's name and forwarded redacted copies to the District Attorney's office and to defense counsel. Based in part upon that letter defense counsel moved to set aside the verdict. That motion was denied.

## II

On the record before us it is clear that the jury could have found defendant guilty of either an intentional crime or a crime the central element of which was recklessness. They determined that the act which led to Giani's death was a reckless one. We do not quarrel with their holding. We note only that having determined on recklessness they correctly acquitted on the charges of intentional homicide, for the two are mutually exclusive (*see, People v Ludkowitz,* 266 NY 233, 243; *Darry v People,* 10 NY 120).

Thus, the primary — indeed the sole — question before us is whether defendant's recklessness was such that it evinced "a depraved indifference to human life" creating "a grave risk of death to another person" and thereby caused the death of another person.

Traditionally, this "highest crime of *reckless* homicide" is "very similar to a former Penal Law offense classified as first degree murder (§ 1044 [2]). Each version embraces extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness: for example, shooting into a crowd, placing a time bomb in a public place, or opening the door of the lions' cage in the zoo" (Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 125.25, p 399). Other illustrations include the random firing of shots into a house in which several persons are present, resulting in death (*People v Jernatowski,* 238 NY 188) and the firing of a gun in a crowded bar which brought about the death of a person in the bar (*People v Register,* 60 NY2d 270). Essential to the prosecution's case was proof that "defendant's act was imminently dangerous and presented a very high risk of death to others and that *it was committed under circumstances which evidenced a wanton indifference to human life or a depravity of mind*" (*People v Register,* 60 NY2d 270, 274, *supra;*

emphasis added). To constitute depraved indifference murder, the action must rise above mere recklessness. It must be " 'so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another' " (*People v Fenner,* 61 NY2d 971, 973). Recklessness there must be, but there must be something more. There must be an unmotivated wickedness so great as to be indicative of depravity (*see,* dissenting opn of Simons, J., in *People v Lilly,* 71 AD2d 393, 399).

While we agree that the jury was justified in finding that defendant was guilty of reckless conduct, we cannot agree that the conduct was so gross, so wanton and so callously indifferent to human life as to constitute a depraved indifference to human life. The defendant's ballistics expert testified that the weapon with which Giani was shot was a double action revolver and could be fired in either of two ways. If the weapon were not cocked, it could be fired simply by pulling the trigger. In such event, a minimum of 10 pounds of pressure would be necessary, first to cock the weapon and then to move the trigger forward so that the firing pin contained in the trigger mechanism would strike the bullet and set in motion its propulsion. If, however, the trigger were manually cocked, only 4½ pounds of pressure would be needed to set the process in motion. Defendant testified that the weapon was cocked and that when Giani was brushed back by a passing car he became so rattled that he accidentally exerted the minimum pressure necessary to fire the weapon. This evidence was credited by the jury, for only by crediting it could it find recklessness rather than intent. These facts do not warrant the conclusion that defendant's action was so mindless of consequences as to constitute a depraved indifference to human life.

Nor does the presence of others nearby raise the degree of recklessness to the point where it can be construed as depraved indifference. If, as the jury obviously concluded, the actual firing of the weapon was accidental, the reckless act of defendant in placing himself in the position where this could happen did not rise to the point where it was the equivalent of murder in the second degree.

The sole remaining question is whether we have the power to modify the judgment to one of conviction for manslaughter in the second degree or whether we must remand for a new trial. Under CPL 470.15 (2) (a) we are authorized, where the offense is

a lesser included offense, to modify the judgment to reduce it to one of conviction for the lesser included offense (*People v Dlugash,* 41 NY2d 725, 737). In such event, we are required to remit with a direction that the trial court sentence the defendant accordingly (CPL 470.20 [4]).

Accordingly, the judgment of the Supreme Court, New York County (Thomas R. Sullivan, J.), rendered November 1, 1984, convicting defendant of murder in the second degree is modified, on the law (and the facts), to reduce the conviction to manslaughter in the second degree and the matter is remanded to the Supreme Court, New York County, for resentence.

ASCH, J. (dissenting). The majority asserts that defendant's testimony, "credited by the jury," that he "accidentally * * * exerted the minimum pressure necessary to fire the weapon", does not warrant the conclusion that his action was so mindless of consequences as to constitute a depraved indifference to human life. I disagree and would affirm.

When defendant went into a shooter's crouch, cocked and aimed the gun at Giani's head, he was acting in such a reckless manner as to evidence a depraved indifference to life. Defendant's own witnesses testified that once the Colt .38 was cocked, even the slightest movement over a distance as short as .012 inch would cause the gun to fire. The owner's manual for this gun warns that cocking the gun is extremely dangerous since it can easily be accidentally discharged. Defendant's experts also testified that they had witnessed or investigated numerous incidents where an accidental application of a very light touch discharged this gun. One of the witnesses even testified that this risk is so serious that numerous law enforcement agencies, including the New York City Police Department and the Secret Service, do not allow officers to fire in this fashion.

The evidence before the jury showed that defendant was aware of the substantial and unjustifiable risk in cocking his gun and consciously disregarded that risk (Penal Law § 15.05 [3]). He had access to the owner's manual and underwent individual training, although brief, from a professional instructor in handling, firing and safety. He had practiced at least half a dozen times on the firing range with the same Colt .38, usually with the weapon cocked. Thus, defendant must have been aware that when he cocked and aimed the gun, there was a grave risk of the gun discharging with the slightest pressure exerted on its hair trigger. He consciously disregarded that grave risk. This conduct evinced a depraved indifference to human life. "Depraved mind murder resembles manslaughter in the second

degree (a reckless killing which includes the requirement that defendant disregard a substantial risk [Penal Law, § 125.15 subd 1; § 15.05, subd 3]), but the depraved mind murder statute requires in addition not only that the conduct which results in death present a grave risk of death but that it also occur '[u]nder circumstances evincing a depraved indifference to human life.' This additional requirement refers to neither the *mens rea* nor the *actus reus*. If it states an element of the crime at all, it is not an element in the traditional sense but rather a definition of the factual setting in which the risk creating conduct must occur" (*People v Register,* 60 NY2d 270, 276).

It was well within the jury's province to find a depraved indifference to human life in the factual setting presented.

After the auto accident, defendant followed the other auto and got out of his car with a tennis racket. Upon being confronted with a nightstick carried by Giani, defendant retreated. A short time later, defendant drove his car directly at Giani. Thereafter, defendant had more than enough time to calm down and call the police from his apartment. Instead, he took a loaded gun from home and went back to the scene of the altercation. Defendant not only cocked the gun, but assumed a shooter's stance and took deliberate aim at Giani. He knew that it took only the "slightest" force, whether done intentionally or accidentally, to fire that gun. Defendant's conduct after the shooting also showed his depraved indifference to human life. He left Giani dying in the street, and deliberately interrupted a 911 call which could have brought medical aid to the victim. "Whether the risk of defendant's conduct was of the type condemned by the Penal Law was to be decided by the trier of the facts aided by appropriate instructions (*People v Licitra,* 47 NY2d 554, citing *People v Haney,* 30 NY2d 328; *People v Angelo,* 246 NY 451). The jury's proper role, as the Appellate Division found, was to make a qualitative judgment whether defendant's act was of such gravity that it placed the crime upon the same level as the taking of life by premeditated design * * * It had to determine from the evidence if defendant's conduct, though reckless, was equal in blameworthiness to intentional murder" (*People v Register, supra,* at pp 274-275). The evidence presented supported the verdict, and the contrary finding by the majority herein therefore usurps "[t]he jury's proper role."

Finally, the "inference" drawn by the majority from a post-trial letter received from a juror, that the jury would have found defendant guilty of a lesser degree of homicide had they realized that depraved indifference murder was murder in the second

degree, is unwarranted. Before the verdict, the jury asked if the counts were "presented in descending order of seriousness." The court repeated that manslaughter was a lesser included offense of murder and cautioned the jury that it should not consider punishment or possible punishment in its deliberations. According to the letter referred to by the majority, the jurors thereafter elected to announce the "compromise" verdict, even though by then they *fully* understood that they earlier had been "laboring under a false assumption."

In any event, it is inappropriate for this court to speculate on what happened during deliberations. Statements or testimony by jurors may not be used to impeach a verdict that has been solemnly made and publicly returned in court (*see, People v De Lucia,* 15 NY2d 294, *cert denied* 382 US 821, *on rearg* 20 NY2d 275; *Dalrymple v Williams,* 63 NY2d 361; *People v Foti,* 99 AD2d 517).

SANDLER and ELLERIN, JJ., concur with BLOOM, J.; MURPHY, P. J., and ASCH, J., dissent in an opinion by ASCH, J.

Judgment, Supreme Court, New York County, rendered on November 1, 1984, modified, on the law and the facts, to reduce the conviction to manslaughter in the second degree, and the matter remanded to the Supreme Court, New York County, for resentence.