OPINION OF THE COURT
Hancock, Jr., J.
Conduct intended merely to scare off an assailant or to keep him at bay may place the assailant in such imminent danger of grave bodily injury or death that the conduct, without more, constitutes the "use of deadly physical force” to which the defense of justification applies (see, Penal Law § 10.00 [11]; § 35.15). Where such conduct is the basis of a criminal charge and the defendant argues that it was justified by the menacing actions and threats of the assailant, the court must instruct the jury on the elements of the defense of justification set forth in Penal Law § 35.15.
I
Defendant was convicted in a jury trial of depraved indifference murder (Penal Law § 125.25 [2]) for the shooting death of one Giani. The shooting was the culmination of a series of events which began when the station wagon in which Giani was a passenger rammed defendant’s Ferrari and sped away. The jury acquitted defendant of intentional homicide (Penal Law § 125.25 [1]) and the lesser included offense of manslaughter in the first degree (Penal Law § 125.20), and the Appellate Division reduced the depraved indifference conviction to manslaughter, second degree (Penal Law § 125.15 [l]).[1] On this appeal, defendant argues that his allegedly protective conduct in drawing and aiming a loaded and cocked weapon at Giani— but not firing it intentionally — is not governed by the law of justification for the use of deadly physical force (Penal Law § 35.15 [2]). He sought to argue to the jury that his actions in preparing to shoot were a reasoned response to Giani’s threatening conduct, and he contends that the court should have permitted him to make such argument without charging the jury on the elements of the statutory defense including, specifically, the duty to retreat (Penal Law § 35.15 [2] [a]). For reasons which will appear, we disagree with these contentions. There should be an affirmance.
*27 II
The relevant facts, as related by defendant at trial, are these. On September 6, 1983 defendant’s leased Ferrari was struck in the rear while stopped at the intersection of Houston and Wooster Streets in Manhattan in preparation for making a left hand turn. The car which struck him, a Chevrolet station wagon, pulled around and drove off. Defendant, angered, gave chase and overtook the station wagon at the corner of Spring and Thompson where it was blocked by a van. As defendant started to get out of the car, holding a tennis racket given him by his passenger Klaris, Giani stepped out of the station wagon. He was brandishing a "very large black club” — holding it over his head and shaking it. Defendant described him as "ranting and raving and screaming, 'I’m going to kill you, get back in the car, I’m going to kill you, you mother f — , get in the car’. He just went on and on. He was wild, he was crazed.” The station wagon drove off leaving Giani in the street.
Defendant reentered his car and pulled around Giani to follow the station wagon. With the Ferrari in pursuit, the station wagon proceeded on an irregular course and returned to Spring Street where Giani was still standing. It passed Giani without stopping and, as defendant drove by, Giani moved to the middle of the street shaking the club, yelling and cursing. Defendant continued behind the station wagon narrowly missing Giani.
Defendant and Klaris, driving about the area in search of a police officer, stopped at defendant’s apartment on Mercer Street where defendant went inside to pick up his wallet, car registration and other papers. Upon emerging from his apartment, defendant carried a bolstered gun for which he had a permit. En route to the police station to report the incident, defendant saw the station wagon parked on Broome Street between Wooster and West Broadway and stopped to call the police from a telephone booth. As defendant started to cross Broome Street, he heard a shout and saw Giani pulling the club out of the station wagon. Defendant described what happened as Giani started to cross the street in his direction:
"As he was coming at me — I just said 'Oh, my God’, and drew my gun and cocked it and held it in front of me.
"I put the hammer back [and] held the gun like this [with two hands clasped together and arms extended] in front of me.”
A car passed by Giani, backing him toward the curb. As it *28 did so, the pistol fired. The bullet struck Giani between the eyes. Defendant stated he did not remember pulling the trigger. He panicked, and he and Klaris drove off. Giani died two days later of massive brain damage.
At trial, defendant did not dispute that he drew his weapon and cocked it. However, he contended that his pistol had a hair trigger and that he accidentally exerted enough pressure to fire it. The defense adduced expert testimony describing the operation of a colt .38 pistol such as defendant’s. In "single action” position, the shooter manually cocks the hammer, as defendant did here. Only &V2 pounds of pressure are required to move the trigger the remaining .012 to .015 inch. A second defense expert characterized defendant’s pistol as having a "hair trigger” in such "single action” position, explaining that the "slightest movement”, "extremely light” pressure would cause the weapon to discharge.
At the charging conference, defense counsel stated that he "definitely” did not want the court to charge on the defense of justification under Penal Law § 35.15. Nevertheless, defendant sought to argue that he was justified in drawing the weapon, but not in firing it. The court informed defense counsel that if he made such an argument, the justification defense would be charged.
Defendant argued, in his summation, that the shooting was a tragic accident, but he made no specific argument that the weapon was drawn in self-defense. Accordingly, the People, in their summation, did not argue duty to retreat, and the court did not give a charge on the statutory defense of justification.
Ill
On this appeal defendant argues that, because he claimed the discharge of his pistol was accidental, and did not claim that he fired it in self-defense, the justification defense is inapplicable. He maintains that justification does not apply to an unintentional crime, and that drawing his pistol did not constitute a "use of deadly physical force” within the meaning of Penal Law § 35.15. These arguments are without merit.
Defendant’s contention that the law of justification has no bearing on his conduct, solely because the discharge of his pistol was accidental, requires little comment. It is settled that the defense of justification applies fully to a defendant’s risk-creating conduct, even though it had unintended consequences (see, People v McManus, 67 NY2d 541; People v Huntley, 59 *29 NY2d 868). That a defendant causes injury or death, not deliberately, but recklessly or negligently, does not remove his conduct from the scope of Penal Law article 35. As we explained in People v McManus (supra, at p 547), "there is no basis for limiting the application of the defense of justification to any particular mens rea or to any particular crime involving the use of force.” Hence, in a prosecution for any "crime involving the use of force, a charge on justification is warranted whenever there is evidence to support it.” (Id., at p 549.) Indeed, in People v Huntley (supra) we specifically held the defense applicable to a charge of reckless homicide (Penal Law § 125.15 [1]), the very crime at issue here (see also, People v Torre, 42 NY2d 1036; People v Rodwell, 100 AD2d 772).
Nor, under these circumstances, can we accept defendant’s contention that his allegedly defensive drawing of the pistol did not constitute the "use of deadly physical force” and, therefore, that his actions are not governed by Penal Law § 35.15 (2).[2] "Deadly physical force” is defined in Penal Law § 10.00 (11) as that which is "readily capable of causing death or other serious physical injury” (emphasis added). That definition, adopted primarily for the statutory defense of justification (see, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 10.00, p 21), hinges on the nature of the risk created — i.e., its imminence or immediacy, as well as its gravity. The risk of serious injury or death and the capacity presently to inflict the same are central to the definition, not the consequence of defendant’s conduct or what he intended.
Viewing the evidence in the light most favorable to the defendant (see, People v Torre, 42 NY2d 1036, 1037, supra), his use of the pistol to "scare off” Giani unquestionably placed Giani in the imminent risk of grave danger and, therefore, constituted the "use of deadly physical force.” According to the testimony of defendant’s own experts, the pistol, in a cocked position, was deadly. It was "extremely dangerous” with a "hair trigger”. The pistol "could easily be accidentally *30 discharged” with the "slightest movement” or the application of "extremely light” pressure. Clearly, it was "readily capable” of causing death or physical injury within the meaning of Penal Law § 10.00 (11).
Moreover, defendant’s conduct in drawing the pistol, cocking it, holding it with two hands and arms extended, and aiming it at Giani as he was approaching cannot, contrary to defendant’s contention, be deemed a mere display, threat, or preparation for the use of deadly physical force. It was the actual "use” of such force under any meaningful sense of the word. It would be illogical to restrict the meaning of the "use of deadly physical force” to the deliberate discharge of a weapon or the intentional infliction of bodily injury, and to characterize as mere "preparation” all other conduct with a deadly instrumentality which falls short of that. The mere display or brandishing of a pistol may, perhaps, create an insufficiently imminent threat to life to be considered the "use” of deadly physical force. But, leveling a loaded pistol, with the cocked hammer set to release under the slightest pressure, and pointing it at another approaching from across the street is conduct well beyond a warning or preparation for a deadly act. Such conduct, itself, constitutes a deadly act regardless of how or why the final bit of pressure is applied. Indeed, it creates a danger so nearly approximating the discharge of a pistol as to be reasonably deemed its equivalent for the purpose of the law of justification.
Hence, in People v Huntley (supra), where the defendant was charged with committing murder with a knife, we held the defense of justification to be available even though defendant claimed that the stabbing was accidental. We agreed with the Appellate Division that Penal Law § 35.15 was applicable to the defendant’s use of deadly physical force, whether or not the stabbing was deliberate and whether or not he intended the ultimate consequences of his conduct. Similarly, in People v McManus (supra), we held the defense of justification available to a defendant who used a firearm to "scare off” a group of individuals. The law of justification for the use of deadly physical force was applicable to defendant’s conduct, even though he claimed that his shooting one of the group was an unintended consequence.
Finally, there is no justification under the law for the use of deadly physical force in self-defense except that contained within the statutory defense in Penal Law § 35.15 (2). The *31 statute unambiguously states that "[a] person may not use deadly physical force upon another person * * * unless” certain specified conditions are met (emphasis added). Penal Law § 35.15 is the operative law of self-defense and there is simply no basis for justifying defendant’s conduct by any other standard (see, People v Goetz, 68 NY2d 96 [decided herewith]; People v Dingley, 42 NY2d 888).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye and Alexander concur; Judge Titone taking no part.
Order affirmed.

. We dismissed the People’s appeal (67 NY2d 829) because the Appellate Division’s determination was based in part on its analysis of the facts (CPL 450.90 [2] [a]). Defendant was granted leave to appeal from the reduced conviction by a Judge of this court (67 NY2d 653).

. Penal Law § 35.15 (2) provides in pertinent part, as follows:
"A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:
"(a) He reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating.” (Emphasis added.)