OPINION OF THE COURT
Richard Lee Price, J.
Under indictment number 2667-01 the defendant is charged with one count each of murder in the second degree, Penal Law § 125.25 (1); manslaughter in the first degree, Penal Law § 125.20 (1); criminal possession of a weapon in the second *412 degree, Penal Law § 265.03 (2); and criminal possession of a weapon in the third degree, Penal Law § 265.02 (4).[1] Under indictment number 5493-01, the defendant is charged with one count of murder in the second degree, Penal Law § 125.25 (2) (depraved indifference). On March 11, 2002 in open court, the People moved to consolidate the two indictments and the motion was granted without opposition.
Thereafter, the defendant moved for reinspection of the grand jury minutes on the ground that the presenting A.D.A.S may not have given instructions to the two grand jury panels on the defense of justification, citing People v Valles (62 NY2d 36 [1984] [grand jury must be instructed on any exculpatory defense]). The A.D.A. now handling the case secured the minutes, reread them, and thereafter assured the court that the charge had, indeed, been given to both grand juries. Defense counsel argued that, nevertheless, the presenting A.D.A.s’ respective instructions may not have been sufficient to inform the jury of how to properly apply the defense. (See People v Goetz, 68 NY2d 96 [1986].) The motion to inspect was granted and the matter adjourned for that purpose. Upon inspection, the following determination is now made.
Underlying Facts
The following statement of the facts underlying the charges is a distillation of the evidence before the two grand juries. As such, it is not intended as a conclusion as to what actually occurred nor “whether the defendant is blameworthy. The credibility of witnesses and the reasonableness of defendant’s conduct are to be resolved by the trial jury.” (People v Goetz, supra, 68 NY2d at 100.)
On the morning of May 18, 2001, about 8:40 a.m., the defendant was driving his Chevrolet Tahoe automobile on the Macombs Dam Bridge here in the Bronx. At one point he stopped the car in the left lane of the exit ramp and waited for the light to change. Directly in front of his car was a black Volkswagon, the cars’ bumpers were touching. An eyewitness saw James Roberson, a black male, run from the Volkswagon back to about two or three feet from the driver’s side of the Tahoe. Within a few seconds there was a gunshot and Roberson’s head flew backwards and the man fell to the pavement *413 next to the car. Others in the vicinity heard the shot and went to the scene. The first man arrived on the scene within moments and found the man twitching on the ground, with a single bullet hole in his forehead. Going to the passenger side of the vehicle, he had the driver unlock the door and he got in. The driver — the defendant — told him, in sum and substance, that the man lying on the ground had been bothering and harassing him, making a lot of problems, so he shot him. When asked where the gun was, the defendant pointed to the center console in the truck. The man told the defendant to put his hands outside the window while he retrieved the gun.
A second man responding to the incident parked his car behind the defendant’s Tahoe and put his blinkers on. Thinking the victim had suffered a heart attack, he went over to see if he could administer first aid. As he was looking at the man he testified that the defendant began to speak to him, saying that “the man had been fucking with him and had been accusing him of fucking his wife and that he stopped his car in front of his Tahoe, come out of the car, began to menace him. And then I looked back at the body and I saw the gap in his head and I said to the man, you shot him and he said, I did. Then he told me that he had called 9-1-1 because I was asking people going by to call 9-1-1. He told me that he had done that, and then the police showed up.” The victim was taken to Lincoln Hospital and pronounced dead later that day, at 4:48 p.m.
The Instructions to the Grand Jurors
Because of this evidence, the presenting prosecutors were required to give the grand juries a Penal Law § 35.15 instruction that justification may be a defense to the intentional murder, depraved indifference murder, and intentional manslaughter charges. (People v Goetz, supra, 68 NY2d 96 [1986] [where facts warrant, grand jurors require instruction on justification]; People v Morgan, 290 AD2d 566 [2d Dept 2002] [justification should be charged when a reasonable view of the evidence supports self-defense theory]; People v Willbright, NYLJ, Mar. 11, 2002, at 21, col 1 [Sup Ct, Bronx County 2002] [same]; People v Chin, NYLJ, Apr. 1, 2002, at 26, col 2 [Suffolk County Ct 2002, Mullin, J.] [same]; see also People v Magliato, 68 NY2d 24 [1986], and People u McManus, 67 NY2d 541 [1986] [justification defense has no particular mens rea limitation; a charge is also required for depraved indifference murder].)
*414 In the People’s first presentment, some of the statutory language contained in Penal Law § 35.15[2] was read to the grand jurors immediately following the definitions for the five crimes and the special meaning of the terms “physical injury,” “firearm,” and “loaded firearm.” Without any prefatory explanation, the presenting A.D.A. read subdivision (1) (a) and (b) and subdivision (2) (a), stopping after the word “retreating.” The A.D.A. asked if there were any questions and, when there were not, she left the room so the grand jurors could vote.
The second panel, considering only the charge of depraved indifference murder, Penal Law § 125.25 (2), was instructed on the elements of that crime and then asked “to consider this instruction concerning justification.” This A.D.A. also read subdivision (1) (a) and (b) and all of subdivision (2), but did not stop after the word “retreating,” but also included the exception to the duty to retreat.[3] This prosecutor then stated that “I *415 will charge you now that section — subdivision three of section 35.20 does not apply in this instance.” Then, after giving the definition of “deadly physical force,” the A.D.A. asked for questions. Receiving none, she left the panel to its final deliberations.
Discussion
The same day these motions were made, the New York Law Journal published Justice Bamberger’s opinion in People v Willbright (NYLJ, Mar. 11, 2002, at 21, col 1 [Sup Ct, Bronx County]), in which she dismissed 14 counts of a 20-count indictment because the presenting A.D.A. failed to properly instruct the grand jury on the nature and application of the justification defense. As that thoughtful opinion points out, while it is “often acceptable” to use the statutory language when instructing the grand jury, it is nonetheless essential to inform them of what specific charges the defense may apply to, and most importantly, that the defense is composed of two parts, the subjective state of mind of the defendant when he employed deadly force and the objective reasonableness of a defendant’s actions. (People v Wesley, 76 NY2d 555, 559 [1990]; People v Goetz, 68 NY2d 96 [1986]; People v Bernard, 222 AD2d 599 [2d Dept], lv denied 88 NY2d 844 [1996]; People v Kopera, 184 AD2d 1007 [4th Dept], lv denied 80 NY2d 905 [1992].)
It was made clear in People v Goetz (supra) that Penal Law § 35.15 contains a two-step process of analyzing the “reasonably believes” language in subdivision (1). As explained by the Court in People v Wesley (supra):
“In People v Goetz (68 NY2d 96, supra), we concluded that section 35.15 ‘retains an objective element’ (People v Goetz, supra, at 112) for assessing the reasonableness of defendant’s belief in the necessity for use of deadly force. But, in rejecting the argument that the standard of reasonableness should be purely subjective, we emphasized that the statute requires a determination of reasonableness that is both subjective and objective (id., at 113-115). The critical focus must be placed on the particular defendant and the circumstances actually confronting him at the time of the incident, and what, a reasonable person in those circumstances and having defendant’s background and experiences would conclude (see, 1 CJI[NY] PL 35.00, Introductory Comment, at 848-849).
*416 “To determine whether a defendant’s conduct was justified under Penal Law § 35.15, a two-step inquiry is required. The jury must first determine whether defendant actually believed that deadly physical force was necessary (see, People v Goetz, supra, at 115). If the People fail to meet their burden of proving that defendant did not actually believe that the use of deadly physical force was necessary, then the jury must move to the second step of the inquiry and assess the reasonableness of this belief (id., at 115).
“We held in Goetz that Penal Law § 35.15 requires a jury to consider both subjective and objective factors in determining whether a defendant’s conduct was reasonable. We stated that ‘a determination of reasonableness must be based on the “circumstances” facing a defendant or his “situation” * * * [A] jury should be instructed to consider this type of evidence in weighing the defendant’s actions.’ (Id., at 114-115.) Evidence of a defendant’s ‘circumstances’ includes relevant knowledge that the defendant may have had about the victim, the physical attributes of all those involved in the incident, and any prior experiences that the defendant may have had ‘which could provide a reasonable basis for a belief that another person’s intentions were to injure or rob him or that the use of deadly force was necessary’ (id., at 114).” (People v Wesley, supra, 76 NY2d at 559.)
Instructions to grand juries rarely expand upon a mere reading of the statutory language of the particular crime and the Penal Law definitions of certain terms applicable to that crime, such as “deadly physical force” or “depraved indifference.” As a rule, presenting prosecutors do not parse the elements of each crime the way a judge charging a jury does. However, certain charges are too complicated tó be merely stated without some explanation and, as set forth above, the justification defense contained in Penal Law § 35.15 requires more than just a recitation of the statutory language, because if the defendant’s view of what happened is accepted by the jurors, they must deem his conduct as justifiable and therefore not criminal.[4] Accordingly, it is incumbent upon presenting district attorneys to *417 explain how this defense works and how jurors are to apply it to the facts in order to analyze whether it is applicable. “While instructions to the Grand Jury need not be as precise as those given to a petit jury, they may not be so misleading or incomplete as to substantially undermine the integrity of the proceedings (see People v Batashure, 75 NY2d 306, 311-312; People v Calbud, Inc., 49 NY2d 389, 396; see also CPL 210.35 [5]).” (People v Caracciola, 78 NY2d 1021, 1022 [1991]; see also People v Davis, 201 AD2d 827 [2d Dept], lv denied 83 NY2d 910 [1994].)
In this case — unlike the situation before Justice Bam-berger — there was no great complication to the evidence, nor were there multiple defendants, a great number of charges, evidence and instructions intermixed and presented over a span of time, or questions about the defendant’s defense of third persons as well as himself. However, the relative simplicity of the facts here does not obviate the prosecution’s threshold responsibility to give the grand jurors sufficient guidance so that they can perform their important function with intelligence. (People v Caracciola, supra, citing People v Valles, supra, 62 NY2d 36, 38 [1984].)
Conclusion
Because neither grand jury panel was given any instruction on what to do with the statutory language read to them, nor informed of the two-part analysis required to evaluate the viability of the defense, the counts of murder in the second degree, Penal Law § 125.25 (1), and manslaughter in the first degree, Penal Law § 125.20 (1), under indictment number 2667-01, and the single count of murder in the second degree, Penal Law § 125.25 (2), under indictment number 5493-01, must be dismissed. The People are granted leave to re-present these charges within 30 days of this order (CPL 210.20 [4].)

. Count two in indictment number 2667-01, charging depraved indifference murder, was dismissed with leave to re-present because the presenting Assistant District Attorney (A.D.A.) failed to instruct the grand jury on the element of depraved indifference.

. “§ 35.15 Justification; use of physical force in defense of a person
“1. A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person, unless:
“2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:
“(a) He reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating; except that he is under no duty to retreat if he is:
“(i) in his dwelling and not the initial aggressor; or
“(c) He reasonably believes that such other person is committing or attempting to commit a burglary, and the circumstances are such that the use of deadly physical force is authorized by subdivision three of section 35.20.”

. Id.

. In CJI(NY)2d PL 35.15 (2) (a), the suggested language makes clear that the jurors must first find all of the elements of the crime in defendant’s *417 actions and then go on to consider whether, nonetheless, the justification defense renders such conduct legal.