10-224-pr
Rivera v. Cuomo

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------

August Term, 2010

(Argued: May 13, 2011          Decided: August 9, 2011)

Docket No. 10-224-pr

----------------------------------------------------------------X

JOHN RIVERA,

Petitioner/Appellant,

- v. -

ANDREW CUOMO, NEW YORK STATE ATTORNEY
GENERAL and JOSEPH SMITH, SUPERINTENDENT,
SHAWANGUNK CORRECTIONAL FACILITY,

Respondents/Appellees.

----------------------------------------------------------------X

Before:   McLAUGHLIN, POOLER, B. D. PARKER, Circuit Judges.

Petitioner-Appellant John Rivera ("Rivera") was convicted of one count of depraved indifference murder in violation of New York Penal Law § 125.25(2).  He now appeals from a judgment entered in the United States District Court for the Eastern District of New York (Townes, J.) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On appeal, Rivera argues that the district court erred in holding that the applicable law of depraved indifference murder was the law in

effect when Rivera was convicted on September 19, 1997. We agree, and hold that the district court should have applied the law as it existed at the time Rivera's conviction became final, i.e., once the period in which Rivera's time to file a writ of certiorari to the United States Supreme Court expired. Rivera also argues that, in July 2004, the evidence adduced at trial was legally insufficient to support a conviction for depraved indifference murder. Again, we agree, and hold that, at the time Rivera's conviction became final in July 2004, no reasonable jury could have found Rivera guilty of depraved indifference murder. Accordingly, the judgment of the district court is **REVERSED** and **REMANDED** with instructions to grant Rivera's petition for a writ of habeas corpus.

WILLIAM CARNEY, The Legal Aid Society, Criminal Appeals Bureau, New York, New York, for Appellant.

CHARLES J. HYNES (Leonard Joblove and Seth M. Lieberman, Assistant District Attorneys), District Attorney, Kings County, Brooklyn, New York, for Respondents-Appellees.

McLAUGHLIN, Circuit Judge:

Petitioner-Appellant John Rivera ("Rivera") was convicted on September 19, 1997, of one count of depraved indifference murder in violation of New York Penal Law § 125.25(2) after his estranged wife died from a single gunshot wound to the head at point-blank range. In December 2003, the Appellate Division

2

rejected Rivera's direct appeal, People v. Rivera, 2 A.D.3d 884 (2d Dep't 2003), and, on April 14, 2004, Judge Rosenblatt of the New York Court of Appeals denied Rivera leave to appeal to that court, People v. Rivera, 2 N.Y.3d 764 (2004).

Rivera subsequently filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York (Townes, J.), arguing that the evidence was insufficient to support a conviction for depraved indifference murder.  Applying the New York law of depraved indifference in existence at the time Rivera was convicted at trial in September 1997, the district court denied relief.  See Rivera v. Cuomo, No. 05-CV-1699, 2009 WL 4929264, at *22-23, 25 (E.D.N.Y. Dec. 21, 2009).  Rivera now appeals.  In June 2010, this Court granted a certificate of appealability on the specific issue of "whether, under the law as it existed when appellant's conviction became final, the evidence was legally sufficient to support a conviction for depraved indifference murder."

On appeal, Rivera raises two arguments.  First, Rivera argues that the district court erred in applying the law in effect when he was convicted at trial on September 19, 1997 rather than the law in effect at the time his conviction became final on July 13, 2004.  Second, Rivera argues that, under the law in effect at the time his conviction became final, the

evidence was legally insufficient to support a conviction for depraved indifference murder.

For the reasons that follow, we agree with both of Rivera's contentions. Accordingly, Rivera's petition for a writ of habeas corpus must be granted.

**BACKGROUND**

In its Memorandum and Order of December 21, 2009, the district court provided a detailed account of the factual background of the instant petition. See Rivera, 2009 WL 4929264, at *1-15. We assume familiarity with the district court's order and repeat the facts herein only to the extent necessary to explain our ruling.

On the night of January 13, 1997, Kimberly Cassas Rivera ("Cassas"), Rivera's estranged wife, suffered a single, fatal gunshot wound to the head from a nine-millimeter Beretta handgun fired at point-blank range. Rivera was ultimately indicted in New York state court on two counts of murder in the second degree--intentional murder in violation of New York Penal Law § 125.25(1) and depraved indifference murder in violation of § 125.25(2)--as well as lesser charges not relevant to this appeal.

In the summer of 1997, Rivera was tried on these charges in the Supreme Court for the State of New York, Kings County. Despite the dual indictment, at trial, the prosecution pursued a single theory of intentional murder. Specifically, the

4

prosecution argued that, after a short and tumultuous marriage, and angry that Cassas was filing for divorce and seeking primary custody of their infant son, Rivera, who had a history of violent outbursts and domestic abuse, lured Cassas to his apartment with the intention of killing her and then, while the two were standing on the sidewalk outside the apartment, "put a 9mm handgun to [her] head . . . and pulled the trigger." J.A. 28. All of the State's evidence at trial was calculated to support this theory of intentional murder, including evidence that Rivera was in possession of the nine-millimeter Beretta handgun used to kill Cassas immediately before the murder, testimony from Cassas's divorce lawyer that Rivera called her twice in the days and hours before the murder threatening to kill Cassas with her gun, and testimony from Rivera's former employer that the day before the shooting Rivera told his co-workers that he "couldn't take [Cassas], couldn't stand her," and wished her dead. J.A. 1020.

Indeed, in summation, the prosecutor told the jury:

> The people maintain it was an intentional act . . . . [E]veryone agrees that when you take this gun, which they call a deadly weapon for a good reason, and when it is pressed . . . against the head and the trigger is pulled and the gun is discharged, there can be no question in any reasonable person's mind that whoever pulled that trigger intended to cause the death of the individual against whose head it was pressed. So I submit that is not an issue. This is an intent. An intent to kill. J.A. 1463 (emphasis added).

5

Throughout trial, Rivera's sole defense was that Cassas committed suicide. According to Rivera's version, Cassas, who had been depressed ever since their son's birth eight months earlier, showed up on the night of her death distraught and, threatening to kill herself, pulled the Beretta handgun from her car and put it to her head. Although Rivera attempted to take the gun away from her, while the gun was pressed near her temple, a distraught Cassas pulled the trigger, inflicting upon herself a single gunshot wound to the head. In support of this theory, Rivera presented, inter alia, both expert and eyewitness testimony suggesting that, at some point immediately before the gun went off, there had been a struggle between Rivera and Cassas for possession of the gun.

During the trial, defense counsel moved to dismiss the depraved indifference murder charge for lack of evidence. The court denied the motion and charged the jury on both intentional and depraved indifference murder, as well as on manslaughter in the first degree as a lesser included offense to intentional murder. Manslaughter as a lesser included offense to depraved indifference murder (i.e., "reckless manslaughter") was not submitted to the jury.

The jury eventually found Rivera not guilty of intentional murder, but guilty of depraved indifference murder--and found Rivera guilty of the remaining misdemeanor charges not relevant

6

to this appeal.  The court then sentenced Rivera to 23 years to life in prison on the depraved indifference murder charge.

On direct appeal, Rivera challenged his conviction for depraved indifference murder on the ground that the evidence was insufficient to support a finding of recklessness since all of the evidence adduced at trial went to a theory of intentional conduct.  The Appellate Division rejected this argument and upheld Rivera's conviction.  See Rivera, 2 A.D.3d at 884.

On April 14, 2004, Judge Rosenblatt of the New York Court of Appeals denied Rivera leave to appeal to that court.  See Rivera, 2 N.Y.3d at 764.

In April 2005, Rivera filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Eastern District of New York, on the sole ground that, by affirming Rivera's conviction for depraved indifference murder, the state courts unreasonably applied federal law.  See 28 U.S.C. § 2254(d).  Specifically, Rivera argued that the evidence was legally insufficient in his case to support a finding of reckless and depraved conduct since all of the evidence adduced at trial went to a theory of intentional conduct, and therefore his conviction violated the rule of Jackson v. Virginia, 443 U.S. 307 (1979), requiring proof beyond a reasonable doubt of every element of a crime to support a conviction.  See Rivera, 2009 WL 4929264, at *15.  The district court disagreed, holding that, under the law

of depraved indifference in effect at the time of Rivera's trial in September 1997, the evidence was legally sufficient to support a conviction for depraved indifference murder.  See id. at *22-23, 25.  Rivera now appeals.

In June 2010, this Court granted a certificate of appealability on the specific issue of "whether, under the law as it existed when appellant's conviction became final, the evidence was legally sufficient to support a conviction for depraved indifference murder," and this appeal ensued.

**DISCUSSION**

**I. Standard of Review**

We review the district court's denial of habeas relief de novo, Henry v. Ricks, 578 F.3d 134, 137 (2d Cir. 2009), accepting the district court's factual findings unless clearly erroneous, Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant habeas relief only if the challenged state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d); Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009).  A state court decision involves an "unreasonable application of" federal law "if it correctly identifies the governing legal principle but unreasonably applies or unreasonably refuses to

8

extend that principle to the facts of a particular case."
Richard S. v. Carpinello, 589 F.3d 75, 80 (2d Cir. 2009).

## II. Governing Federal Law

"Under the Due Process Clause of the Fifth and Fourteenth Amendments, no conviction may be sustained 'except upon proof beyond reasonable doubt of every fact necessary to constitute the crime . . . charged.'" Henry, 578 F.3d at 138 (quoting In re Winship, 397 U.S. 358, 364 (1970)). A habeas petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. When reviewing the sufficiency of a state conviction, "[t]his 'standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'" Langston v. Smith, 630 F.3d 310, 314 (2d Cir. 2011) (quoting Jackson, 443 U.S. at 324 n.16).

## III. Applicable State Law

Under New York law, a person is guilty of depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal L. § 125.25(2) (emphasis added). Thus, "recklessness" has always been an element of the offense of depraved indifference murder, see,

9

e.g., People v. Sanchez, 98 N.Y.2d 373, 380(2002), which the prosecution had to prove beyond a reasonable doubt in order to support Rivera's conviction, see Langston, 630 F.3d at 314-15. Because "one who acts intentionally in shooting a person to death . . . cannot at the same time act recklessly," People v. Gallagher, 69 N.Y.2d 525, 528-29 (1987), "under N.Y. law, intentional murder and depraved indifference murder are mutually exclusive," Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 812 (2d Cir. 2000).

From 1983 to 2002, the N.Y. Court of Appeals understood "depraved indifference" to "refer[] to neither the mens rea nor actus reus" of the crime of depraved indifference murder, but to the "factual setting in which the risk creating conduct must occur." People v. Register, 60 N.Y.2d 270, 276 (1983) (emphasis removed from original); accord Sanchez, 98 N.Y.2d at 379-84. Under this formulation, "the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent—-for example, a point blank shooting of a victim in the head—-likewise demonstrated depraved indifference." Policano v. Herbert, 7 N.Y.3d 588, 601 (2006).

In 2003, however, in People v. Hafeez, the New York Court of Appeals departed slightly from this earlier understanding of "depraved indifference," recognizing that certain murders are so "quintessentially intentional" that they cannot properly be

10

categorized as depraved indifference murder. See 100 N.Y.2d 253, 257-59 (2003); see also People v. Feingold, 7 N.Y.3d 288, 294 (2006) (noting that the shift away from the Register/Sanchez formulation of depraved indifference murder began with Hafeez). In that case, Hafeez had plotted for months with a friend to get revenge on the victim--with whom they had a previous altercation--and had lured the victim out of a bar, where, after a brief struggle, the friend administered a fatal wound to the victim's heart with a knife. See Hafeez, 100 N.Y.2d at 257. At trial, the State pursued a theory of intentional murder: the defendants plotted the murder for months in advance, lured the victim out of the bar to a place "where he would be vulnerable to attack," and then killed the victim instantly by way of a "single deliberate wound" to his chest. See id. at 258. Hafeez, on the other hand, insisted that the death was accidental: he and his friend intended only to beat up the victim but, during a "quick-moving fistfight," the victim was accidentally stabbed. See id. at 261 (dissent). The jury acquitted Hafeez of intentional murder, but convicted him of depraved indifference murder.

On appeal, the N.Y. Court of Appeals held that, despite some possible evidence of a struggle, because the overwhelming weight of the evidence suggested that Hafeez and his friend had plotted the attack ahead of time, deliberately lured the victim out of the bar to effectuate their plan, and killed the victim by way of

11

a "single deliberate wound," the attack was "quintessentially intentional," and therefore the "'heightened recklessness' required for depraved indifference murder was simply not present." See id. at 258-59 (quoting Sanchez, 98 N.Y.2d at 380). As such, because "the actions of both defendants were focused on first isolating, and then intentionally injuring, the victim," no reasonable jury could have found Hafeez guilty of depraved indifference murder rather than intentional murder. Id. at 259.

The N.Y. Court of Appeals further eroded its prior case law in People v. Gonzalez, decided in March 2004. See 1 N.Y.3d 464, 467 (2004). Finding that defendant's act of shooting his victim at close range could not be depraved indifference murder, the court explained:

> Depraved indifference murder differs from intentional murder in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant's conduct. . . . [W]here, as here, a defendant's conduct is specifically designed to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct.

Id. at 467. Were it otherwise, the court cautioned, it would "improperly convert every intentional homicide into a depraved indifference murder," id. at 468, since there is always some remote chance, if the jury wishes to so speculate, that a defendant who shot his victim point blank did so spontaneously or accidentally, see id. at 467-68. The court made clear, however,

12

that such speculation cannot convert an intentional homicide into depraved indifference murder. See id.

After Rivera's conviction became final in July 2004, the New York Court of Appeals decided a number of additional cases that further recast the Register/Sanchez formulation of depraved indifference murder, see People v. Payne, 3 N.Y.3d 266 (2004); People v. Suarez, 6 N.Y.3d 202 (2005), until finally, in People v. Feingold, the court formally overruled Register and Sanchez. 7 N.Y.3d 288, 292, 296 (2006); see also id. (stating that, in overruling Register and Sanchez, the court was simply "confirming what [was] implicit in the line of cases [beginning with] Hafeez"). However, because these cases were decided after Rivera's conviction became final in July 2004, we cite to them only to the extent that they provide a clarification of pre-existing law. See Henry, 578 F.3d at 138; People v. Policano, 7 N.Y.3d 588, 603-04 (2006). In any event, as discussed further below, even in the absence of these additional cases, the New York Court of Appeals had made sufficiently clear by the time Rivera's conviction became final in July 2004 that facts such as those in Rivera's case could not support a conviction for depraved indifference murder.

**IV.  Law To Be Applied On Collateral Review**

For habeas purposes, a New York state-court conviction becomes final 90 days after the New York Court of Appeals denies

13

leave to appeal, which is when the petitioner's time to apply for a writ of certiorari to the United State Supreme Court expires. See Fernandez v. Artuz, 402 F.3d 111, 112 (2d Cir. 2005).

**V. Analysis**

As a preliminary matter, the district court erred in finding that the applicable law of depraved indifference murder was the law in effect when Rivera was convicted at trial on September 19, 1997. See Rivera, 2009 WL 4929264, at *23. Instead, the district court should have applied the law as it existed at the time Rivera's conviction became final, 90 days after the New York Court of Appeals denied Rivera leave to appeal to that court. See Fernandez, 402 F.3d at 112. Applying this rule, Rivera's conviction became final on July 13, 2004. Since, as we explain in further detail below, the date used to determine which version of New York law to apply is determinative in Rivera's case, we reverse the district court on this point.

Turning to the merits, Rivera asks us to find that, by the time his conviction became final in July 2004--and thus after Hafeez and Gonzalez had been decided--the law of depraved indifference had so fundamentally changed that no point-blank, one-on-one shooting could be depraved indifference murder. Appellant's Br. 43-44. The State, on the other hand, suggests that Hafeez and Gonzalez effected no change in New York's law of depraved indifference murder because both of those decisions

14

"necessarily rest on the particular facts of [those] cases." Appellee's Br. 48-54. Thus, the State argues, the decisions in Hafeez and Gonzalez have no bearing on Rivera's case. Id. at 49. While we decline to go as far as Rivera urges, neither do we accept the State's position. Rather, we find that, although perhaps some point-blank shootings could still have been categorized as depraved indifference murder when Rivera's conviction became final in July 2004, cf. People v. Baptiste, 51 A.D.3d 184, 185 (3d Dep't 2008) (concluding that the law did not completely change until the New York Court of Appeals decided Payne in October 2004), by that time, under any reasonable view of the evidence adduced at trial, Rivera's point-blank shooting of Cassas--which, as explained in further detail below, was either undoubtedly intentional or accidental in the course of a struggle--could not support a depraved indifference murder conviction. As such, by upholding Rivera's conviction for depraved indifference murder in July 2004, the state courts unreasonably applied federal law. See 28 U.S.C. § 2254(d); Jackson, 443 U.S. at 315, 324.

Viewing the evidence adduced at Rivera's trial in the light most favorable to the verdict, as we must at this juncture, see id. at 319, a reasonable jury could have found either of two possible scenarios to explain Cassas's death. First, a reasonable jury could have found, as the State argued at trial,

15

that Rivera plotted his attack on Cassas in advance, lured her to his home on the night of the murder, and then deliberately "put a nine millimeter semiautomatic Beretta handgun to [her] head . . . and pulled the trigger." J.A. 28. After <u>Hafeez</u>, however, such a "quintessentially intentional attack" could no longer be categorized as depraved indifference murder. <u>See</u> <u>id.</u> at 258-59. Thus, to the same extent as in <u>Hafeez</u>, in Rivera's case, no reasonable jury could find Rivera guilty of depraved indifference murder rather than intentional murder on such facts. <u>See</u> <u>id.</u> at 259.

Moreover, any doubt that may have remained after <u>Hafeez</u> as to whether such a "quintessentially intentional" killing could support a conviction for depraved indifference murder was definitively laid to rest in <u>Gonzalez</u> (which we note had not yet been decided at the time of Rivera's trial or appeal to the Appellate Division), when the New York Court of Appeals declared that "where . . . a defendant's conduct is specifically designed to cause the death of the victim"--as would have been the case if the jury found that Rivera lured Cassas to his apartment, intentionally put the gun to her temple, and pulled the trigger--"it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct." 1 N.Y.3d at 467, 469; <u>accord</u> <u>Payne</u>, 3 N.Y.3d at 270 (stating that <u>Hafeez</u>, <u>Gonzalez</u>, and <u>Sanchez</u> "made it clear that depraved indifference

16

murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York").

Alternatively, the State now contends--contrary to its position at Rivera's trial--that a reasonable jury could also have found that, after bringing the gun to his meeting with Cassas in an attempt to scare or intimidate her, Rivera accidentally shot Cassas when the gun discharged during a struggle.[1] The State argues that this alternative set of facts would support a conviction for depraved indifference murder because the act of "confronting [Cassas] . . .with a loaded weapon, thereby precipitating a struggle for the gun," was sufficiently reckless to render Cassas's resulting death depraved indifference murder. Appellee's Br. 39-40. This argument is

---

[1] We note that this theory hinges on a good deal of speculation, as it is relies in large part on the defense's evidence at trial that a struggle over the gun ensued when Rivera attempted to stop Cassas from shooting herself in the head. See, e.g., Appellee's Br. 23-24, 26-27, 43; see also Langston, 630 F.3d at 314 (cautioning that "a conviction based on speculation and surmise alone cannot stand, and courts cannot credit inferences within the realm of possibility when those inferences are unreasonable"); id. (explaining that, where an inference is necessary to support an element of the crime, "it is not enough that the inferences in the government's favor are permissible"; rather, the "inferences must be sufficiently supported to permit a rational juror to find that the element is established beyond a reasonable doubt"); Gonzalez, 1 N.Y.3d at 467-68 (rejecting the prosecution's speculative argument that the jury may have concluded that defendant recklessly fired the first shot spontaneously or impulsively rather than intentionally). However, without passing on the reasonableness of this theory in light of the trial record, we accept this version of the facts as plausible for purposes of this appeal and proceed accordingly.

17

without merit, however, as such facts would not rise to the level of depraved indifference murder even under Register and Sanchez.

As the New York Court of Appeals has repeatedly explained, to find depraved indifference murder rather than manslaughter, the jury needs to

> find defendant's conduct, beyond being reckless, so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another.

People v. Fenner, 61 N.Y.2d 971, 973 (1984); accord Gonzalez, 1 N.Y.3d at 467. The New York Court of Appeals further reinforced the distinction between depraved indifference murder and manslaughter in Sanchez:

> [T]he majority writing in Register does not hold that "ordinary recklessness" is sufficient to establish depraved indifference murder. Register requires a significantly heightened recklessness, distinguishing it from manslaughter in two ways. First, "in a depraved mind murder the actor's conduct must present a grave risk of death whereas in manslaughter it presents the lesser substantial risk of death." Then, it also requires proof of circumstances manifesting a depraved indifference to human life, focusing the injury, as we have seen, "upon an objective assessment of the degree of risk" which "converts the substantial risk present in manslaughter into a very substantial risk."

98 N.Y.2d at 380 (quoting Register, 60 N.Y.2d at 276) (internal citations omitted) (first emphasis added); see also id. ("[T]he statutory requirement that the homicide result from conduct

18

evincing a depraved indifference to human life is a legislative attempt to qualitatively measure egregiously reckless conduct and to differentiate it from manslaughter." (quoting Register, 60 N.Y.2d at 279) (emphasis in original)).

Quintessential examples of such "significantly heightened recklessness," id., include intentionally firing multiple shots into a crowd, see Fenner, 61 N.Y.2d at 973, intentionally firing several shots through a lit window next to which the decedent was standing, see People v. Jernatowski, 238 N.Y. 188, 193 (1924), intentionally firing a pistol through a door into a small, enclosed space that the shooter knew contained the victim, see People v. Mannix, 302 A.D.2d 297, 297-98 (1st Dep't 2003), intentionally driving an automobile along a crowded sidewalk at high speed, see People v. Gomez, 65 N.Y.2d 9, 12 (1985), or shooting a partially loaded gun at a person's chest during a game of Russian roulette, see People v. Roe, 74 N.Y.2d 20, 27-28 (1989).

None of these fact patterns are analogous to Rivera's case, however. To wit, the mere act of bringing a gun to a contentious confrontation, as Rivera may have done--while grossly reckless and perhaps posing the "substantial risk," Sanchez, 98 N.Y.2d at 380, required to support a conviction for manslaughter--is not "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy,"

19

Fenner, 61 N.Y.2d at 973, as to render a resulting death depraved indifference murder as opposed to manslaughter. See Gonzalez, 1 N.Y.3d at 467; Sanchez, 98 N.Y.2d at 378-84; Fenner, 61 N.Y.2d at 973; People v. Magliato, 110 A.D.2d 266, 270 (1st Dep't 1985)(reducing conviction from depraved indifference murder to manslaughter because defendant's conduct of bringing a loaded gun to a confrontation, then cocking the gun and aiming it at victim's head, where it accidentally discharged and fired a fatal bullet into the victim's forehead, was not so egregiously reckless that it rendered the killing depraved indifference murder rather than manslaughter under Register and its progeny), aff'd, 68 N.Y.2d 24 (1986); id. ("If . . . the jury concluded [that] the actual firing of the weapon was accidental, the recklessness of defendant in placing himself in the position where this could happen did not rise to the point where it was the equivalent of [depraved indifference] murder."). In fact, in Payne, the New York Court of Appeals made clear that, although it is "reckless" to "br[ing] a weapon to a contentious confrontation" or "wield a weapon carelessly," the law does not hold that "any homicide that results [from such conduct] could qualify as depraved indifference murder."[2] 3 N.Y.3d at 270.

---

[2] While we recognize that this case was decided after Rivera's conviction became final, because this proclamation serves as a clarification of existing law rather than a statement of new law, we may rely on it on collateral review. See Henry, 578 F.3d at 138.

20

Respondent has not provided, nor were we able to find, any case to the contrary, in which a New York appellate court has held that the mere act of bringing a gun to a contentious confrontation, without more, could rise to the level of depraved indifference murder.

Were there evidence that Rivera intentionally pulled the trigger of the gun during the struggle, then perhaps his conduct might rise to the level of depraved indifference murder. See, e.g., People v. Lanier, 275 A.D.2d 937, 937 (4th Dep't 2000) (finding that defendant's conviction for depraved indifference murder was appropriate because a reasonable jury could have concluded that, although defendant did not have the conscious objective to cause the victim's death when he acted, his conduct of firing several shots during his struggle with the victim was "reckless[]" and "evinc[ed] a depraved indifference to human life"). But there is no such evidence in this case. In fact, there was no testimony at Rivera's trial suggesting that Rivera meant only to threaten or frighten Cassas, or that Rivera held the gun to Cassas's head, before the gun discharged. In the absence of such evidence, the jury may not use its imagination to fill in the blanks. See Langston, 630 F.3d at 314 ("[A] conviction based on speculation and surmise alone cannot stand, and courts cannot credit inferences within the realm of possibility when those inferences are unreasonable" (internal

21

citations and quotations marks omitted)); see also Gonzalez, 1 N.Y.3d at 467-68 (making clear that "no rational jury could have accepted" the prosecution's speculative argument that the defendant recklessly fired his gun "spontaneously or impulsively" rather than intentionally just so that defendant's conviction for depraved indifference murder could stand).  Thus, in light of the clear guidance from New York's appellate courts regarding the "significantly heightened recklessness" required to support a conviction for depraved indifference, Sanchez, 98 N.Y.2d at 380, no reasonable jury could have found that the mere act of "confronting [Cassas] . . . with a loaded weapon, thereby precipitating a struggle for the gun," Appellee's Br. 39-40, without more, could support a conviction for depraved indifference murder.

Since neither of the two permissible views of the evidence adduced at Rivera's trial--that Rivera either (1) plotted to kill Cassas, lured her to his apartment, and then intentionally shot her once in the head at point-blank range; or (2) brought a gun to his meeting with Cassas and then accidentally discharged the weapon into her head during a struggle--carried the requisite degree of recklessness needed to support a conviction for depraved indifference murder when Rivera's conviction became final in July 2004, upholding Rivera's conviction constituted an "unreasonable application of clearly established federal law," 28

22

U.S.C. § 2254(d), namely the mandate in <u>Jackson</u> that the jury find each element of the crime beyond a reasonable doubt.  <u>See</u> 443 U.S. at 315, 324.  As such, we are compelled to  reverse and remand this case with instructions to grant Rivera's petition for a writ of habeas corpus.  <u>See</u> <u>id.</u>; 28 U.S.C. § 2254(d).

**CONCLUSION**

In light of the foregoing, the judgment of the district court is **REVERSED** and **REMANDED** with instructions to grant Rivera's petition for a writ of habeas corpus.