**Richard DIGUGLIELMO,**
**Petitioner–Appellant,**

v.

**Daniel A. SENKOWSKI, Superintendent, Clinton Correctional Facility, Respondent–Appellee.**

**Docket No. 01–2026.**

United States Court of Appeals,
Second Circuit.

June 3, 2002.

Andrew H. Schapiro (Anita Krishnaku-mar, on the brief), Mayer, Brown & Platt, New York, NY, for Petitioner–Appellant.

Robert K. Sauer, Assistant District Attorney of Westchester County (Jeanine Pirro, District Attorney, and Richard E. Weill, First Deputy District Attorney, on the brief), White Plains, NY, for Respondent–Appellee.

Present WALKER, Chief Judge, CABRANES and STRAUB, Circuit Judges.

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Petitioner–Appellant, Richard DiGuglielmo, appeals from a judgment entered by the United States District Court for the Southern District of New York (Charles L. Brieant, Judge) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, we hold that the petitioner failed to exhaust in state court the federal claims he presses in his current petition. Accordingly, we dismiss Diguglielmo's petition without prejudice so that he may fully exhaust his state court remedies.

### Factual and Procedural Background

In the late afternoon of October 3, 1996, Mr. Charles Campbell parked his car outside of a delicatessen located in Dobbs Ferry, N.Y., owned by Richard DiGuglielmo, Sr., the father of the petitioner, and then walked across the street to a pizzeria. Irritated by persons who used the delicatessen's parking area to patronize other establishments, DiGuglielmo, Sr. demanded that Campbell park elsewhere and, when his demands were not met, attempted to place a sticker on the window of Campbell's car. When Campbell confronted DiGuglielmo, Sr., the petitioner, an off-duty New York City police officer, emerged from the delicatessen and a fist-fight ensued. Soon both the petitioner's father and brother-in-law joined the fight. Campbell was knocked to the ground where he was kicked and punched repeatedly. Ultimately, Campbell was able to regain his feet and the fighting abated. Campbell then retreated to his car where he opened the trunk and removed an aluminum baseball bat. Although eyewitness accounts differ as to the sequence and nature of events that next transpired, it is clear that the fight reignited and Campbell struck DiGuglielmo, Sr. in the leg with the bat. About this time the petitioner ran back into the delicatessen and reemerged with his police-issued handgun. Without a warning shot or a command to Campbell, the petitioner fired three shots into Campbell's torso. Campbell was pronounced dead later that evening at the Dobbs Ferry Community Hospital.

DiGuglielmo was charged with assault and two alternative counts of second degree murder under New York law: intentional murder and depraved indifference murder. N.Y. Penal Law § 125.25(1) & (2) (McKinney 1999). He was tried to a jury in the County Court of Westchester County (Peter M. Leavitt, Judge). At tri-

al, both the prosecution and defense put forward multiple eye-witnesses who testified about the events of October 3, 1996. In addition, the petitioner testified in his own defense. DiGuglielmo claimed that he did not intend to kill Campbell, but acted instead to protect his father. He claimed that Campbell was poised to strike his father in the head with the baseball bat and that he had no time to disarm Campbell or choose a different course of action.

On October 24, 1997, the jury returned a verdict of guilty on the charge of depraved indifference murder, but acquitted on the intentional murder and assault charges. After his conviction, DiGuglielmo appealed within the New York court system. First, he requested that the trial court vacate the judgment of conviction based on a number of claimed errors of law. The trial court denied the request. DiGuglielmo then appealed his conviction to the Appellate Division, Second Department. DiGuglielmo's primary claims on appeal were that the jury verdict was contrary to the weight of the evidence and that the trial court misstated the law regarding the justification defense when instructing the jury. In addition, DiGuglielmo claimed that the prosecution amended its theory of depravity during the trial and the trial court improperly refused to allow defense counsel to be heard prior to reinstructing the jury. In a terse opinion, the Appellate Division rejected DiGuglielmo's claims and affirmed the conviction. *People v. DiGuglielmo*, 258 A.D.2d 591, 686 N.Y.S.2d 443, 444 (App.Div.1999). Finally, DiGuglielmo requested that the New York Court of Appeals hear his case by submitting an Application for Leave to Appeal ("Leave Application"). Leave to appeal to the New York Court of Appeals was denied. *People v. DiGuglielmo*, 93 N.Y.2d 923, 693 N.Y.S.2d 507, 715 N.E.2d 510 (1999).

After the close of his direct appeal, DiGuglielmo filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the District Court. In an opinion dated December 27, 2000, the court denied the petition, finding that DiGuglielmo's claims amounted to either harmless error only, or were otherwise insufficient to entitle DiGuglielmo to a new trial. However, stating that "this case raises pure issues of law upon which reasonable persons could differ," the court granted DiGuglielmo a certificate of appealability.

Discussion

DiGuglielmo raises three claims in his current habeas petition. First, he claims that the trial court violated his due process rights as guaranteed by the Fourteenth Amendment to the federal Constitution by misstating New York state law when instructing the jury on the justification defense. Second, he claims that he was deprived of a fair trial when the prosecution altered its theory of depravity during the course of the proceedings. And third, he claims that his Sixth Amendment rights were violated by the trial court's refusal to allow defense counsel to be heard prior to reinstruction of the jury. However, because we find that DiGuglielmo failed to exhaust these arguments in state court, we decline to reach the merits of any of his claims.

In order for a federal court to consider arguments raised in a habeas petition, the petitioner must first exhaust all state remedies. See *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir.1991). State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) informed that court of both the factual and legal bases for the federal claim. See *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v.*

*Attorney Gen. of State of N.Y.,* 696 F.2d 186, 191–92 (2d Cir.1982) (en banc).

In his submissions to the Appellate Division, DiGuglielmo raised a number of challenges to his conviction. Although his arguments were primarily based on state law, when setting forth many of his claims he referenced specific provisions of the federal Constitution and cited federal cases employing federal constitutional analyses. This arguably was enough to raise federal constitutional claims in addition to his state law claims. However, in his Leave Application submitted to the New York Court of Appeals, DiGuglielmo pressed only four arguments, all entirely based on state statutory and constitutional law. The Leave Application cited no federal cases whatsoever, failed to identify any federal constitutional provision, and never explicitly set forth the elements of any federal constitutional doctrine. Thus, in making his arguments in his application for leave to appeal to the New York Court of Appeals, DiGuglielmo appeared to have abandoned his federal constitutional claims. Despite this, DiGuglielmo urges two bases upon which we might find his claims exhausted:

(1) That the federal constitutional arguments contained in his Appellate Division materials were incorporated by reference into his Leave Application.

(2) That the arguments in his Leave Application, though based on state law, were of such a character that they alerted the New York Court of Appeals that he was pressing federal constitutional claims.

As to the first of the above, when requesting that the New York Court of Appeals hear his case, DiGuglielmo attached copies of his Appellate Division briefs to his Leave Application. In the concluding portion of his Leave Application, DiGuglielmo stated that "for the reasons and arguments set forth, not only in this letter but also in the appellant's prior submissions to this Court, i.e., copies of the parties' briefs and appendices, errors of law are extant on this trial record ..." See Leave Appl. at 13 (emphasis omitted). This was the only reference in his entire Application to possible new claims contained in other submissions. Based on *Jordan v. LeFevre,* 206 F.3d 196, 198–99 (2d Cir.2000), this reference is inadequate to alert the New York Court of Appeals to other claims found in his Appellate Division materials. Like that case, DiGuglielmo fully argued several state law claims and then made only a passing reference to other arguments raised in supplemental materials. As we stated in Jordan, "attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction." *Id.* at 199. See also *Ramirez v. Attorney Gen. of State of N.Y.,* 280 F.3d 87, 97–98 (2d Cir.2001); *Grey,* 933 F.2d at 120.

Nor do we find that the nature or presentation of the claims made in his Leave Application was sufficient to alert the New York Court of Appeals to the fact that he was raising claims based on federal law. DiGuglielmo's Leave Application made no mention of the federal Constitution in regard to any of the claims contained in his current petition. In fact, the word "constitutional" appears only twice in the entire application, and neither reference makes clear whether DiGuglielmo was referring to the state or federal constitution. Thus, not only did the Application fail to reference a specific federal constitutional provision, but the Application did not even identify the United States Constitution at all. And although DiGuglielmo claimed that he had been denied a "fair trial," the Application does not set forth the elements of any federal due process doctrine. Nor did DiGuglielmo cite any federal case law, or

even state cases that employ federal constitutional analyses.

Under such circumstances, DiGuglielmo simply failed to do enough to alert the New York Court of Appeals that he was making claims under the federal Constitution. As stated by the Supreme Court, "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam). Here, DiGuglielmo's petition falls far short of setting forth the factual allegations and legal arguments necessary to "fairly present" his federal constitutional claims. See *Daye*, 696 F.2d at 194. Nor do any of DiGuglielmo's claims "call to mind a specific right protected by the Constitution" or allege a pattern of "facts that fall 'well within the mainstream of constitutional litigation.'" *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir.1995) (quoting *Daye*, 696 F.2d at 194); see also *Ramirez*, 280 F.3d at 95–97; *Strogov v. Attorney Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999) *cert. denied*, 530 U.S. 1264, 120 S.Ct. 2723, 147 L.Ed.2d 987(2000).

In short, the reasonable import of DiGuglielmo's submissions to the New York Court of Appeals was that DiGuglielmo wished to assert exclusively state law claims. Thus, because the New York Court of Appeals has not yet had an opportunity to address DiGuglielmo's federal claims, comity requires that we allow that court an opportunity to do so. Accordingly, we dismiss DiGuglielmo's petition without prejudice.[1] This will allow DiGuglielmo to pursue any procedural options available to him in New York state court, and then take whatever steps may be appropriate to return to federal court if necessary.

---

1. We recognize that in other situations this court has gone on to consider whether a petitioner has viable procedural options available in state court, as well as whether the petitioner could establish cause and prejudice for failing to exhaust. See, e.g., *Strogov*, 191 F.3d at 193–94. In the context of this case, however, it would be imprudent for this court to consider such issues. Because it is not clear whether DiGuglielmo has procedural options available for example, by an application for a writ of coram nobis it would be inappropriate for this court to rule on this state law issue. Moreover, whether DiGuglielmo can establish cause for his failure to exhaust may turn on factual issues that have not yet been developed. By dismissing without prejudice, these issues may be taken up in more appropriate fora.