Reginald JACKSON (97–A–6354), Petitioner,

v.

Ernest EDWARDS, Superintendent of Otisville Correctional Facility, Respondent.

Nos. 01–CV–0501(JBW), 03–MISC–0066(JBW).

United States District Court, E.D. New York.

Sept. 25, 2003.

---

Reginald Jackson, Wallkill, NY, Pro se.

Paul M. Gamble, Law Office of Paul Gamble, Esq., New York City, for Petitioner.

Esther Noe, Phyllis Mintz, The Office of the District Attorney, Kings County, Brooklyn, NY, for Respondent.

## MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

### I. Introduction

Petitioner was charged with murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree in connection with the shooting death of Selwyn Anthony Brown on March 8, 1997. He confessed to shooting Brown, but contended at trial that the shooting was accidental and justified. Despite ample evidence in the record supporting a justification charge under New York law, the trial court refused to submit such an instruction to the jury. When given the chance to argue on his client's behalf for such an instruction, petitioner's trial counsel failed to point to the relevant supporting law and trial testimony. He instead cited only inapposite and irrelevant caselaw to the court.

### II. Facts and Procedural History

Petitioner was the superintendent of an apartment building at 110 Grove Street. On March 8, 1997, Brown was in apartment 1B at 110 Grove Street, his sister's apartment. He was drinking and playing cards with several family members and friends including Ula Dawn Hall and her younger sister Natalie Hall. Ula Dawn and Natalie Hall previously had lived with their mother in apartment 2E at 110 Grove Street. Although the family moved out of the apartment, they left some furniture there and returned occasionally to pick up mail. Natalie Hall retained a set of keys to the apartment.

At approximately midnight on March 8, 1997, Natalie Hall returned the keys to apartment 2E to petitioner at his request. She then left the building at 110 Grove Street to go to the store. Upon returning, she told her sister Ula Dawn Hall that she had given the keys to petitioner. Ula Dawn Hall decided to go with her sister to talk to petitioner. They found petitioner at apartment 2E changing the lock on the door, and a heated argument ensued among the three over the keys. The sisters pushed their way into the apartment, where they argued further with petitioner over food in the refrigerator. Natalie Hall left the apartment; her sister remained and continued to argue with petitioner. Ula Dawn Hall eventually decided to re-

turn downstairs, but as she was leaving she ran into Brown on his way up the stairs. Brown insisted on getting the keys back right away.

Brown and petitioner began a loud and hostile argument. A number of other tenants and guests in the building were present; some became involved in the altercation. Natalie Hall testified that she saw Brown raise his hands and push petitioner before she left to go back downstairs. A tenant in the building testified that she saw Brown punch petitioner twice, knocking him to the ground. Ula Dawn Hall, several other members of Brown's family, and another tenant in the building testified that they did not see any contact between petitioner and Brown. All observers testified that the argument between Brown and petitioner was heated, and that Brown was motioning with his hands as he spoke.

In the middle of the argument, petitioner pulled a gun out of his pocket. The gun discharged, and Brown was shot. Brown turned and ran down the stairs, but fell before reaching the entrance of the building. He later died as a result of the gunshot wound. Petitioner followed Brown down the stairs, then continued to run out the door, through the courtyard, and away from the building. Petitioner threw the gun away while running; it was never recovered.

After the shooting, petitioner called a police officer with whom he was acquainted and told him that he wanted to surrender. After the officer picked petitioner up, he aided the police in their search for the gun. He waived his *Miranda* rights and confessed to the shooting.

A jury found petitioner guilty of the charged lesser-included-offense, manslaughter in the second degree, and criminal possession of a weapon in the second degree. He was sentenced to concurrent terms of imprisonment of five to fifteen years on the manslaughter conviction and

seven and one-half to fifteen years on the criminal possession of a weapon conviction. Petitioner's convictions were affirmed by the Appellate Division, Second Department. Leave to appeal was denied by the New York Court of Appeals.

Petitioner subsequently moved to vacate his judgment of conviction pursuant to New York Criminal Procedure Law section 440.10. The motion was denied by the New York Supreme Court, Kings County. Leave to appeal was denied by the Appellate Division. The instant habeas petition was held in abeyance pending the resolution of these proceedings.

In the instant application for a writ of habeas corpus as amended, petitioner claims (1) that the trial court erred in refusing to charge the jury on the justification defense; and (2) that he received ineffective assistance of counsel.

## III. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court ar-

rives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

■ "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002); *see also Yung v. Walker,* 341 F.3d 104 (2d Cir.2003) (amended opinion) (district court's habeas decision that relied on precedent from the court of appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Torres v. Berbary,* 340 F.3d 63, 72 (2d Cir.2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly

waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, at *4 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## V. Procedural Bar

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. In determining whether a procedural bar is sufficient to preclude habeas review, a federal court must consider as "guideposts" the following:

(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (quoting *Lee v. Kemna,* 534 U.S. 362, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)).

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■ When a state court says that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, such a claim is not preserved. *See Glenn v. Bartlett,* 98 F.3d 721, 724–25 (2d Cir.1996). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Services,* 235 F.3d 804, 810 (2d Cir. 2000). Where "a state court's ruling does not make clear whether a claim was rejected for procedural or substantive reasons and where the record does not otherwise preclude the possibility that the claim was denied on procedural grounds, AEDPA deference is not given, because we cannot say that the state court's decision was on the merits." *Su v. Filion,* 335 F.3d 119, 126 n. 3 (2d Cir.2003) (citing *Miranda v. Bennett,* 322 F.3d 171, 178 (2d Cir.2003)). This congeries of holdings leaves it an open question whether there are "situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.*

## VI. Certificate of Appealability

■ A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. **Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit.** *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The court has taken into account the rule of

section 2253(c)(3) of Title 28 of the United States Code that a certificate of appealability "shall indicate which specific issue or issues satisfy the [substantial showing of the denial of a constitutional right] required by paragraph (2)." *See also Shabazz v. Artuz,* 336 F.3d 154, 160 (2d Cir. 2003).

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

## VII. Analysis of Claims

### A. Jury Instruction on Justification Defense

Petitioner claims first that the trial court improperly declined to instruct the jury on the justification defense in violation of his right to a fair trial.

### 1. Exhaustion

■ As a preliminary matter, the court rejects respondent's contention that this claim has not been exhausted in the state courts. Respondent argues that because this claim was not presented in federal constitutional terms in state court on direct appeal it is unexhausted, and that it should be deemed procedurally barred because petitioner no longer has a state forum in which to present it.

Petitioner's counsel on direct appeal argued that the trial court's failure to charge justification constituted reversible error under state law. Petitioner's appellate brief did not refer to any federal constitutional provision. No federal cases or state cases employing constitutional analysis were cited. The State in response treated the claim as one arising under state law.

The Appellate Division disposed of the claim in a single sentence: "Contrary to the defendant's contention, no reasonable view of the evidence supports a justification charge and, thus, the trial court properly declined to give it." *People v. Jackson,* 266 A.D.2d 475, 698 N.Y.S.2d 887 (2d Dep't 1999).

■ Exhaustion of a federal constitutional claim in state court does not invariably require citation of "book and verse on the federal constitution." *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (internal quotation omitted). A petitioner may exhaust a federal constitutional claim by alleging "a pattern of facts well within the mainstream of constitutional litigation." *Daye v. Attorney General,* 696 F.2d 186, 194 (2d Cir. 1982). A claim is regarded as exhausted under such circumstances because "the state courts must be considered to have been fairly alerted to its constitutional nature." *Id.* at 193.

> [T]he federal habeas court should assume that the state courts, which are obliged, equally with the courts of the Union, ... to guard, enforce, and protect every right granted or secured by the Constitution of the United States, ... have been alerted to consider, and have considered, the constitutional claim. To eschew that assumption is surely to disserve the interests of comity and the respect due the diligent jurists on the state bench.

*Id.* at 194 (internal quotations and citations omitted). Whether petitioner in the instant case has so exhausted his due process claim arising out of the trial court's failure to charge on justification appears to this court to be a close question.

The Court of Appeals for the Second Circuit in an unpublished opinion held that an allegation that the trial court misstated the law while giving a justification instruc-

tion did not "call to mind a specific right protected by the Constitution or allege a pattern of facts that fall well within the mainstream of constitutional litigation." *Diguglielmo v. Senkowski,* 42 Fed.Appx. 492 (2d Cir.2002) (internal quotations omitted). It has not had occasion to directly consider whether a state court's complete failure to charge a jury on justification falls within the mainstream of constitutional litigation for purposes of exhaustion. *Compare Davis v. Strack,* 270 F.3d 111, 122–23 (federal constitutional claim fairly presented where the point heading on petitioner's brief in state court read: "The Court's Refusal to Charge Justification . . . Deprived Appellant of His Due Process Right to a Fair Trial. U.S. Const., Amend. XIV; N.Y. Const., Art. 1, § 6"). It has held under other circumstances that erroneous jury instructions may give rise to claims falling within this category. *See, e.g., Holland v. Scully,* 797 F.2d 57, 64–65 (2d Cir.1986) (claim that court's supplemental jury instructions violated petitioner's due process rights exhausted where petitioner argued in state court only that the instructions failed to comport with New York law because factual pattern "falls so squarely within the fundamental due process rule that the prosecution prove every element of the offense"). *But compare Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (federal due process challenge to a jury instruction not exhausted where the petitioner on direct appeal relied solely on a single state case to argue that the trial court's instruction on malice was erroneous and the state appellate court hearing the claim had treated it as solely one of state law).

In the instant case, petitioner's federal constitutional claim was fairly presented to the state courts by persuasive implication attributed to the state judiciary. On the facts and circumstances as presented to the state court, "no reasonable jurist could doubt that the defendant's claim implicated

[a] constitutional right." *Holland v. Scully,* 797 F.2d 57, 64–65 (2d Cir.1986) (quoting *Daye v. Attorney General,* 696 F.2d 186, 193 (2d Cir.1982)). Because the claim is exhausted and not procedurally barred, this court will consider its merits pursuant to the deferential standards of AEDPA.

### 2. Merits

■■ "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully,* 769 F.2d 60, 63 (2d Cir.1985). In weighing the prejudice from an allegedly improper charge, a reviewing court must view the instruction in its total context. *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. 396.

This standard presents two questions in the instant case: First, did the state trial court err in refusing to charge the jury on justification? Second, did that error deprive petitioner of his federal constitutional right to due process? The Court of Appeals for the Second Circuit has twice confronted these questions. *See Blazic v. Henderson,* 900 F.2d 534 (2d Cir.1990); *Davis v. Strack,* 270 F.3d 111 (2d Cir. 2001).

### a. Justification Charge under New York Law

■ Petitioner was entitled under New York law to rely on the defense of justification and to have the jury instructed on that issue. The state trial court erred in

failing to so charge. The defense of justification under New York Penal Law Article 35 affirmatively permits the use of force under certain specified circumstances. A person may use physical force "upon another person when and to the extent he reasonably believes such to be necessary to defend himself ... from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person." N.Y. Penal L. § 35.15(1). Deadly physical force may be used by a person only when:

 (a) He reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating ...; or

 (b) He reasonably believes that such other person is committing or attempting to commit a kidnapping, forcible rape, forcible sodomy or robbery; or

 (c) He reasonably believes that such other person is committing or attempting to commit a burglary, and the circumstances are such that the use of deadly physical force is authorized by subdivision three of section 35.20.

N.Y. Penal L. § 35.15(2). Subdivision three of section 35.20 authorizes the use of deadly physical force under the following circumstances:

 A person in possession or control of, or licensed or privileged to be in, a dwelling or an occupied building, who reasonably believes that another person is committing or attempting to commit a burglary of such dwelling or building, may use deadly physical force upon such other person when he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of such burglary.

*See also Matter of Y.K.,* 87 N.Y.2d 430, 639 N.Y.S.2d 1001, 663 N.E.2d 313 (1996); *People v. McManus,* 67 N.Y.2d 541, 505 N.Y.S.2d 43, 496 N.E.2d 202 (1986); *People v. Goetz,* 68 N.Y.2d 96, 506 N.Y.S.2d 18, 497 N.E.2d 41 (1986). A justification charge may be warranted even where a defendant argues that the act upon which the defense is based was not intentional. *See People v. Khan,* 68 N.Y.2d 921, 510 N.Y.S.2d 72, 502 N.E.2d 987 (1986).

In both *Blazic* and *Davis,* the Court of Appeals for the Second Circuit held—despite contrary state trial and appellate court rulings—that the petitioners were entitled to a justification charge under New York law:

[I]f the record includes evidence which, viewed in the light most favorable to the defendant and drawing all reasonably permissible inferences in his favor, satisfies the essential elements of the defense of justification, the charge must be given. Where a justification charge is warranted, a court's refusal to instruct the jury that the People must disprove the defendant's claim of justification constitutes reversible error.

*Davis v. Strack,* 270 F.3d 111, 124–25 (2d Cir.2001); *Blazic v. Henderson,* 900 F.2d 534, 540 (2d Cir.1990).

From the testimony and evidence presented at petitioner's trial, a jury could have concluded that petitioner reasonably believed that Brown was attempting to take the keys by force from him—that is, attempting to commit a robbery. *See* N.Y. Penal L. § 35.15(2)(b); *see also* N.Y. Penal L. § 160.00 ("Robbery is forcible stealing."). Alternatively, a jury could have decided that petitioner reasonably believed Brown was attempting to enter apartment 2E with the intent to take the keys from petitioner—attempting to commit a burglary—and the requirements of section 35.20 for the use of deadly physical force were

otherwise met. *See* N.Y. Penal L. §§ 35.15(2)(c); 35.20(3) ("A person in possession or control of, or licensed or privileged to be in, a dwelling or an occupied building, who reasonably believes that another person is committing or attempting to commit a burglary of such dwelling or building, may use deadly physical force upon such other person when he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of such burglary."); *see also* N.Y. Penal L. art. 140 (burglary and related offenses). The decision of the Appellate Division on petitioner's direct appeal that no reasonable view of the evidence supported a justification charge was based on an unreasonable determination of the facts in light of the evidence presented.

### b. Deprivation of Due Process

Under the Second Circuit's decision in *Davis v. Strack*, the trial court's error in the instant case so infected the proceedings as to deprive petitioner of his federal due process right to a fair trial. The standard, as set out in *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), for weighing the prejudice resulting from an improper jury charge appears to be somewhat stringent, and a relatively difficult burden to satisfy given the deferential standards of review of state court holdings mandated by AEDPA. The Second Circuit in *Davis*, however, endorsed a more liberal interpretation of the *Cupp* rule in finding that the failure to charge justification under the circumstances of the case before it so infected the entire trial that the resulting conviction violated due process. It explained:

> Here, in contrast, the error was of immense importance. This is not a case of a minor error in state law in explaining the legal standards to the jury. It is not a case of a refusal to instruct on a fantastic, improbable defense that the jury was unlikely to adopt. Nor was the

absence of an instruction on justification mitigated by other portions of the charge.... The effects of the court's error were to deprive Davis entirely of his defense—on which he had a significant possibility of prevailing—and to insure his conviction. The effect of the error was catastrophic.

*Davis v. Strack*, 270 F.3d at 131–32. While such a broad statement seems to risk making the rule of *Cupp* meaningless in the context of a trial court's erroneous failure to charge justification, it cannot be said that the situation presented by the instant case is different in any significant respect.

It should be noted that the Second Circuit in *Blazic*, an earlier case, held that the trial court's error in failing to instruct on justification did not deprive petitioner of his right to due process because it found that a justification charge would not have affected the jury's verdict:

> Nor do we think a justification charge would have affected the outcome if a jury found that the prosecution proved all the elements of second degree murder and a jury proceeded to a self-defense claim. For a jury to find that the prosecution met its burden, a jury would have had to reject significant aspects of Blazic's account. Certainly, if a jury rejected the majority of Blazic's testimony, a justification charge would not have affected the jury's verdict since his testimony was the only evidence supporting a justification claim.

*Blazic v. Henderson*, 900 F.2d 534, 542–43 (2d Cir.1990). While the Second Circuit in *Davis* appears to mischaracterize somewhat the situation presented in *Blazic* in its attempt to distinguish it, *see Davis*, 270 F.3d at 131–32, the instant case is easily distinguished from *Blazic*. Petitioner's justification claim here relies not on his own testimony—he did not testify at tri-

al—but on the testimony of his witness and that of several of the state's witnesses in addition to petitioner's video-taped statement to the police.

The video-taped statement has been received in evidence at a habeas hearing held in this court. It supports petitioner's view that the shooting was justified to prevent a burglary. Petitioner was the superintendent of the building, engaged in his regular work of replacing a lock on an apartment door. It is recommended, respectfully, that on any appeal the panel view the video. Petitioner could well have supported a claim that he was preventing a burglary as well as defending himself. A justification charge was requested and denied.

### c. Weapons Conviction

▆▆▆ The weapons conviction might not have been supported by a jury verdict if the jury had accepted the justification defense. According to petitioner, the weapon was carried by him—albeitly unlawfully because it was not licensed—to protect himself in the building when he worked late at night. If the jury were to conclude that his intended use of the weapon was at all times lawful, all of the elements of New York's second degree criminal weapons possession statute would not be proved. *See* N.Y. Penal Law § 265.03 ("A person is guilty of criminal possession of a weapon in the second degree when, *with intent to use the same unlawfully against another:* ... He possesses a loaded firearm ...." (emphasis added)).

The rule of *People v. Pons,* 68 N.Y.2d 264, 508 N.Y.S.2d 403, 501 N.E.2d 11 (1986), is not to the contrary. In *Pons,* the New York Court of Appeals rejected a defendant's argument that a justification charge be presented to the jury not only with respect to his murder charge, but also with respect to the charge of second degree criminal possession of a weapon. The

defendant had argued that justification negated the element of "intent to use unlawfully." The Court of Appeals—in an uncharacteristically legalistic opinion that has, with good reason, frequently been criticized by other New York State courts—explained that

Defendant's argument proceeds on an erroneous conception of the fundamental basis for the justification defense found in Penal Law § 35.15. Contrary to his contention, justification does not negate a particular element of the crime charged. As we observed in *McManus,* justification "affirmatively permits the use of force under certain circumstances [citations omitted]. Pursuant to Penal Law § 35.15, a person 'may' use physical force to defend himself or a third person, and his conduct, which would otherwise constitute an offense, is simply not criminal (*see, People v. Padgett,* 60 N.Y.2d 142, 145, 468 N.Y.S.2d 854, 456 N.E.2d 795; *cf. People v. Sullivan,* 7 N.Y. 396, 400 (1852)). The defense *does not operate to excuse a criminal act, nor does it negate a particular element of a crime.* Rather, by recognizing the use of force to be privileged under certain circumstances, it renders such conduct entirely lawful" (*People v. McManus, supra,* at 545–546 [emphasis added]). Moreover, it is evident from the wording of the statute (Penal Law § 35.15), its title ("Justification; use of physical force in defense of a person") and from our decisions that it is only the "use of physical force" which, under the circumstances specified in the statute, is lawful (*see, People v. McManus, supra,* at 545, 546; *see also, People v. Magliato,* 68 N.Y.2d 24, 28–30, 505 N.Y.S.2d 836, 496 N.E.2d 856). We hold, therefore, that because possession of a weapon does not involve the use of physical force (*see, People v. Almodovar, supra* ), there are no circumstances when justification (Pe-

nal Law § 35.15) can be a defense to the crime of criminal possession of a weapon.

*Pons*, 508 N.Y.S.2d 403, 501 N.E.2d at 13.

Whatever the merits of the reasoning of the Court of Appeals, it must be clarified that its holding is that justification is not a defense to the crime of criminal possession of a weapon *once* all the elements of the crime of criminal possession of a weapon have been established. In the instant case, petitioner contends that neither at the time of the shooting nor at any other time during which he had possession of the unlicensed handgun did he "inten[d] to use the same unlawfully against another." N.Y. Penal Law § 265.03. If a jury were to find that petitioner was justified in using his unlicensed weapon to thwart a burglary, then his use of the firearm at the moment of the shooting was "entirely lawful," *Pons*, 508 N.Y.S.2d 403, 501 N.E.2d at 13, and the "intent" element of second degree criminal possession of a weapon could not be established based solely upon the shooting.

The propriety of applying such an analysis is implicit in a later passage from *Pons*:

Notwithstanding the foregoing, defendant maintains, citing *People v. Lewis* (116 A.D.2d 16, 499 N.Y.S.2d 709 (1st Dep't 1986), *supra*) and *People v. Morris* (109 A.D.2d 413, 417, 491 N.Y.S.2d 860 (1985), *supra*), that the statute should apply to "intent to use" the weapon as well as its actual "use". Because there was sufficient evidence of self-defense to warrant a justification charge on the murder and manslaughter counts based on defendant's use of physical force in discharging the weapon, he contends that the court should also have given the charge on the criminal possession count as bearing on his intention to use physical force in the period prior to the actual shooting. The contention is clearly flawed. First, intent to use and use of force are not the same, and justification, by the very words of the statute (Penal Law § 35.15), is limited to the latter. Second, it does not follow that because defendant was justified in the actual shooting of the weapon under the particular circumstances existing at that moment, he lacked the intent to use the weapon unlawfully during the continuum of time that he possessed it prior to the shooting. Whether the People established beyond a reasonable doubt that defendant possessed the weapon during that period "with intent to use [it] unlawfully against another" (Penal Law § 265.03) was a question for the jury to determine based on the court's charge pertaining to the elements of the crime and to the proof necessary to establish unlawful intent (*see, People v. Evans*, 106 A.D.2d 527, 483 N.Y.S.2d 339 (1984)).

*Pons*, 508 N.Y.S.2d 403, 501 N.E.2d at 13.

The upshot of this passage is that the state must prove—and a properly instructed jury must find—that a defendant, at some point "during the continuum of time" that he possessed a weapon, intended to use it unlawfully against another person. In other words, proof that a shooting was justified at the time that a weapon was used is insufficient to negate an element of the criminal possession of a weapon charge *if* the state can demonstrate that at some other point during a defendant's possession of the weapon he had the intent to use it unlawfully against another person.

Mere possession of an unlicensed and loaded firearm "is presumptive evidence of intent to use the same unlawfully against another." N.Y. Penal Law § 265.15(4); *People v. Steward*, 213 A.D.2d 570, 624 N.Y.S.2d 60 (2d Dep't 1995). The presumption is not mandatory, however, and merely permits a properly instructed jury to infer such intent from all the cir-

cumstances of the case. *See People v. Williams,* 95 A.D.2d 866, 464 N.Y.S.2d 541 (1983) ("A mandatory presumption as to an element of a crime is unconstitutional because it conflicts with the defendant's overriding presumption of innocence as to every element of the crime, and invades the jury's fact-finding function.") (citing *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).

In the instant case, a properly instructed jury might conclude that petitioner was justified in using deadly force to thwart a burglary, that the shooting was "entirely lawful," and that he therefore did not have the intent to use his weapon unlawfully against another at the moment of the shooting. The jury could also find that, although petitioner possessed an unlicensed firearm and is presumed therefore to have intended to use it unlawfully against another, he nonetheless at no point during his possession of the weapon *in fact* intended to use it unlawfully against another person. Petitioner does not claim that he is entitled to a justification charge with respect to the second degree weapons charge—something precluded by the holding of *Pons.* Rather, he suggests that if the justification instruction had been given with respect to the homicide charge, the jury might well have determined that he lawfully used deadly force against the shooting victim and that at no time—either prior to the shooting or during the shooting—did he act with intent to use his firearm unlawfully against another person. *See People v. McCullough,* 178 Misc.2d 524, 681 N.Y.S.2d 737, 739 (1998) (distinguishing *Pons* in a similar manner).

Whether or not the above analysis accords sufficiently with New York law, this court cannot fail to consider that a properly instructed jury, if it found petitioner not guilty of the homicide charge, might further conclude that his defense of his employers' property and interests was undeserving of punishment altogether.

Petitioner's conviction for second degree criminal possession of a weapon must be set aside.

## B. Ineffective Assistance of Counsel

Petitioner claims that he was denied effective assistance of trial counsel because his counsel (1) arrived late to court on several occasions, resulting in sanctions imposed by the court; (2) attempted to be relieved as a result of the sanctions on the eve of the pre-trial hearings; (3) waived the pretrial suppression hearings; (4) waived making an opening statement; (5) failed to vigorously object to the prosecutor's leading questions; (6) failed to vigorously cross-examine the prosecution's witnesses; and (7) relied on inapposite and irrelevant case law to support his request for a justification charge. Respondent does not contest that these claims have been exhausted in the New York state courts and are not procedurally barred. They may be considered by this court pursuant to AEDPA's deferential standard.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668,

686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also Wiggins v. Smith,* 539 U.S. ——, ——, 123 S.Ct. 2527, 2529, 156 L.Ed.2d 471 (2003); *United States v. Eyman,* 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

 The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane,* 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes,* 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003).

 As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins,* 261 F.3d 210, 223 (2d Cir.2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt,* 239 F.3d at 201 (same). The court of appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze,* 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for ... counsel's decisions").

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it. *See Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (quotation omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Caballero v. Keane,* 42 F.3d 738, 741 (2d Cir.1994). Each significant factual claim in support of an ineffective-assistance allegation premised on appellate counsel's deficient performance must be exhausted. *See Word v. Lord,* 2002 WL 32145769, at *11 (S.D.N.Y. Mar. 18, 2002) (Magistrate's Report and Recommendation).

On direct appeal in the instant case, the Appellate Division, Second Department held without discussion that, "[u]nder the circumstances of this case, the defendant was not denied effective assistance of counsel." With respect to petitioner's first six claims of ineffective assistance of counsel, this decision was neither contrary to or an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The representation provided by petitioner's counsel was generally effective. Counsel's argument that the shooting was accidental appears to have been successful. The jury acquitted petitioner on the murder charge, convicting him only of manslaughter and criminal possession of a weapon.

Petitioner's first two claims—that his counsel arrived late to court on several occasions, resulting in sanctions imposed by the court, and attempted to be relieved as a result of the sanctions on the eve of the pre-trial hearings fail under *Strickland's* prejudice prong. Petitioner has not attempted to show how the result of the proceedings was affected by this unprofessional conduct.

Petitioner's claims that his counsel failed to vigorously object to the prosecutor's leading questions and to vigorously cross-examine the prosecution's witnesses are unsupported by the record. Further, "decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." *Dunham v. Travis,* 313 F.3d 724, 732 (2d Cir.2002) (internal quotation omitted).

Petitioner's counsel's waivers of the pretrial suppression hearings and opening statement do not constitute representation below an objective standard of reasonableness. Waiver of the pretrial suppression hearings was arguably a sound strategic choice. The "hearings" referred to are presumably the scheduled *Huntley* and *Wade* hearings. There was no basis for the suppression of the petitioner's statements to the police or of the pretrial identification of petitioner. *See* Hr'g Tr. of Aug. 19, 1997, at 7–10. As recognized and emphasized by petitioner's appellate counsel, petitioner's strongest arguments were that the shooting was accidental and/or the shooting was justified. Waiver of an opening statement was also a reasonable strategic choice under the circumstances of the case. While arguments of accident and justification are not necessarily mutually exclusive, petitioner's trial counsel could have reasonably decided to wait until hearing all of the testimony pre-

sented by the State against his client before deciding which argument or theory of the case to emphasize. *See United States v. Wilson,* 216 F.3d 1074, 2000 WL 778021 (2d Cir.2000) (unpublished opinion); *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987).

▮ Petitioner's final ineffective assistance claim—based on his counsel's reliance on inapposite and irrelevant case law to support his request for a justification charge—has merit. The state court's holding to the contrary was an unreasonable application of the *Strickland* standard. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel has a duty to fully investigate both the facts and the law of a case. No reasonable professional judgment could support a failure to research the law in support of a potentially successful defense revealed by evidence presented at trial.

Petitioner's counsel cited three cases to the court in support of his application. *See* Trial Tr. at 461, 463–64. While there are clear errors in the transcription of this exchange, those cases appear to be *People v. Stamen,* 163 A.D.2d 499, 558 N.Y.S.2d 175 (2d Dep't 1990); *People v. Henderson,* 162 A.D.2d 1038, 557 N.Y.S.2d 813 (4th Dep't 1990); and *People v. Ramos,* 59 A.D.2d 859, 399 N.Y.S.2d 123 (1st Dep't 1977). The court in *Stamen* held:

> Viewing the evidence adduced at trial in the light must favorable to the defendant, we find there is no reasonable view thereof which would support a finding that the defendant was in fear of any "imminent" use of force by the victim, her husband, who at the time of the attack was sitting in their living room reading a magazine.

558 N.Y.S.2d at 177. It is difficult to see what support this might possibly be construed to provide for a justification charge in the instant case. A new trial was granted in *Henderson,* but because the trial court "improperly limit[ed] dependant's evidence that he reasonably believed that decedent was about to use deadly force against him," not because a justification charge was warranted on the evidence before the court. 557 N.Y.S.2d at 814. Justification was not dealt with at all in *Ramos.*

▮ Given the potential significance of a charge on justification, counsel's carelessness in this regard is inexcusable in a constitutional sense. It falls significantly below any objective standard of reasonable representation measured under prevailing professional norms. Citing irrelevant caselaw cannot be construed as a "strategic choice." While a more careful practitioner might also have cited federal cases raising the possibility of a habeas challenge in case of conviction, this failure does not alone constitute a lack of adequate lawyering skills. Given the pressures of trial work, reliance on New York State cases suffices—provided they are the right ones. The fact that, as explained in the preceding section, petitioner was in fact entitled to a justification charge under New York law presents a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.

## VIII. Conclusion

The petition for a writ of habeas corpus is granted on two grounds: the denial of due process resulting from the trial court's failure to instruct the jury on justification and the ineffectiveness of trial counsel in relying on inapposite case law to support his request for a justification charge.

Both convictions are set aside. The prisoner shall be released unless within sixty days the state commences prosecution or takes other action appropriate in light of this decision. This decision is stayed until all appellate proceedings are

completed and a final mandate is received by this court.

SO ORDERED.